In the Matter of SUPERIOR HYDRAULIC, INC., Doing Business as SUPERIOR CARTING CO., et al., Respondents, v TOWN BOARD OF THE TOWN OF ISLIP et al., Appellants.

FIRE ISLAND FERRIES INCORPORATED, Respondent, v TOWN OF ISLIP et al., Appellants.

Second Department, August 23, 1982

### APPEARANCES OF COUNSEL

*Martin Bradley Ashare* (*Theodore D. Sklar* of counsel), for Tony's Sanitation Service, Inc., appellant.

*William R. Bennett, Town Attorney* (*Lawrence Donohue* of counsel), for Town of Islip, appellant (relying upon the brief submitted by Tony's Sanitation Service, Inc., appellant).

*Robbins, Wells & Walser* (*Robert C. Royce* of counsel), for Fire Island Ferries, Incorporated, respondent.

### OPINION OF THE COURT

NIEHOFF, J.

The issue presented on these appeals is whether certain contract awards by the Town Board of the Town of Islip

were made in violation of the laws pertaining to competitive bidding. We hold that those laws were violated. Accordingly, we agree with Special Term insofar as it annulled the awards in question. However, we are not in accord with so much of the determination of Special Term as directed that the contracts be awarded to Superior Hydraulic, Inc., and Fire Island Ferries Incorporated, respectively. In our judgment, Special Term should have directed the Town of Islip to reopen bidding for the subject contracts.

The facts are not in dispute.

In February, 1981 the Town Board of the Town of Islip directed that bid specifications be advertised for anyone interested in the collection, removal and disposal of solid waste within the Fair Harbor garbage district. The period involved was 1981 through 1984. Two types of specifications were prepared. One specification concerned the collection of the waste and the other, the removal and disposal of the waste. The bids were opened at 11:00 A.M. on February 25, 1981.

In addition to its bids, Tony's Sanitation Service, Inc. (hereinafter Tony's) sent a letter dated February 24, 1981 wherein its bid prices were conditioned upon its being awarded both contracts and a mailgram dated February 27, 1981 which purportedly "clarified" the submitted bids by stating that its removal bid was intended to be for both collection and removal. The matter was referred for report and recommendation to the town's department of environmental control. As a result, a memorandum dated March 9, 1981 was issued by the department's executive assistant enumerating deficiencies in the bids submitted by Tony's and detailing the various problems surrounding said bids. The executive assistant recommended award of the collection contract to Superior Hydraulic, Inc., and of the removal contract to Fire Island Ferries Incorporated. At its March 17, 1981 meeting, the town board disregarded those branches of the report of its department of environmental control which recommended the awarding of the subject contracts. Instead, the board rejected all of the submitted bids and decided to rebid the matter authorizing carters to

submit bids for both the collection and the removal and disposal contracts.

Three separate bid specifications were then developed and disseminated to interested bidders. The first called for the collection of garbage. The second dealt with the removal and disposal of solid waste. The third was a combination of the collection specifications and the removal specifications.

By notice to bidders dated March 19, 1981 the public was advised that the Town of Islip would receive sealed bids for said contracts which were to be opened and read on April 6, 1981. The bid opening revealed that Tony's was the lowest bidder for the combined contract by $51,720.56. As before, the town board referred the matter to its department of environmental control for a report and recommendation on the resubmitted bids. Once again, the department of environmental control, this time by memorandum of its commissioner, set forth a number of bidding discrepancies by Tony's and because of them, recommended that separate contracts be awarded to Superior Hydraulic and Fire Island Ferries, respectively. Nevertheless, at its meeting of April 10, 1981, the town board unanimously adopted a resolution conditionally awarding the combined contract to Tony's. At a special meeting of the town board held on April 20, 1981 the Commissioner of Environmental Control again recommended that the contracts be awarded to Superior Hydraulic and Fire Island Ferries. However, the combined contract was awarded to Tony's and Superior Hydraulic and Fire Island Ferries each initiated proceedings pursuant to CPLR article 78 to review the award. Ultimately, Special Term granted the petitions by invalidating the bidding, vacating the contract between the town board and Tony's and awarding the contracts to the petitioners. The matters have been consolidated on appeal.

In the proceedings before Special Term, the petitioners set forth a number of reasons why the award to Tony's should be set aside. Of these, Special Term correctly found that (1) Tony's submitted a defective bid bond which was not corrected until three days after the bids were opened; (2) the vessel which Tony's specified would be utilized in removing and disposing of the solid waste (the *Irvington*)

was not Coast Guard certified and was in dry-dock and laid up for repairs at the time the bids were opened; and (3) Tony's failed to furnish the Town of Islip with the required bonds and insurance documents at the time of commencement of the work. Special Term then held that even if the town board had the power to waive items (1) and (2) above, which were found to be variances from the specifications, it could not waive the bonding and insurance provisions because such provisions were not mere irregularities but were material variances from the specifications. While we agree with Special Term's ultimate conclusion that Tony's bids were invalid we do so not because of the failure of Tony's to furnish the town with bonds and insurance documents at the time of commencement of the work, but for the reason that the award to Tony's violates the spirit of the provisions requiring sealed competitive bidding for public contracts.

The letting of public contracts is governed by the provisions of article 5-A of the General Municipal Law which require that municipal public works projects be submitted to open competitive bidding. The declared public policy of article 5-A is "to assure the prudent and economical use of public moneys * * * and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost" (General Municipal Law, § 100-a). This statute was "designed with the dual purposes of fostering honest competition in order that the municipality obtain the best work and supplies at the lowest possible price and also to guard against favoritism, improvidence, extravagance, fraud and corruption" (*Le Cesse Bros. Contr. v Town Bd. of Town of Williamson,* 62 AD2d 28, 31, affd 46 NY2d 960). Indeed, it has been held that logic and experience teach that competition for public contracts may be promoted only by fostering a sense of confidence in potential bidders that their bids will be fairly considered and that they will not be deprived of any substantial benefit afforded to their competitors (see *Molloy v City of New Rochelle,* 198 NY 402; *Matter of Glen Truck Sales & Serv. v Sirignano,* 31 Misc 2d 1027 [HOPKINS, J.]). To that end, courts have held, for example, that a municipality may not allow a bidder to comply with specifications after bids have

been submitted nor waive material variances in bids received (see, e.g., *Le Cesse Bros. Contr. v Town Bd. of Town of Williamson, supra;* 10 McQuillin, Municipal Corporations [3d ed], § 29.65). Were it otherwise, legitimate bidders who might have been willing to reduce their bids had they known that the specifications of the job would be relaxed, would be unfairly deprived of the opportunity to do so. This, combined with the danger of favoritism, fraud or corruption inherent in a selection process conducted under such circumstances, might well discourage contractors from bidding on future contracts, thus diminishing competition to the detriment of the public (*Matter of Fischbach & Moore v New York City Tr. Auth.,* 79 AD2d 14, 20, mot for lv to app den 53 NY2d 604).

The record before us discloses that on March 17, 1981 the town board rejected all bids submitted for the initial bid opening on February 25, 1981 for the same contracts. At that time it was clear the bid bond submitted by Tony's was defective; that Tony's had failed to acknowledge that it had been convicted of 35 counts of offering a false statement for filing in the second degree; that after the bids were opened, Tony's had revised its bids by mailgram; that the bids submitted by Tony's were conditioned upon its being awarded both the collection and removal phases of the contract; and that one of the bids was submitted on a monthly basis and the other on a seasonal basis.

As noted above, there is no dispute that the bid bond submitted by Tony's in connection with the readvertised notice to bidders was also defective and remained uncured until some three days after the bids were opened. Thus, Tony's "bid bond" was tantamount to no bond at all. A valid bid bond is required of prospective bidders so that reparations are available to a municipality in the event that a successful bidder refuses to sign the contract (10 McQuillin, Municipal Corporations [3d ed], § 29.66, p 377). Subdivision 1 of section 103 of the General Municipal Law provides that municipal contracts shall be awarded to "the lowest responsible bidder furnishing the required security". The amount of the security is left to the discretion of the municipality for whose benefit it is posted and as a general rule the awarding body has the right to waive the

security when it is beneficial to do so (*Nowak Constr. Co. v County of Suffolk,* 233 NYS2d 627; see *Le Cesse Bros. Contr. v Town Bd. of Town of Williamson, supra*).

However that may be, the totality of the circumstances in this case, including the additional facts that the vessel specified in Tony's resubmitted bids for use under the contracts not only lacked the required United States Coast Guard certification but also was in dry-dock and laid up for repairs, and the earlier rejection of all bids on these contracts where Tony's bids were deficient in a number of important respects lead us to conclude that the town board's waiver of the variances in this case was improper and that the award to Tony's violated the spirit of the provisions requiring sealed competitive bidding for public contracts.

While we thus agree with Special Term's conclusion that Tony's resubmitted bids should have been rejected and that the Town Board of the Town of Islip erred in awarding the contract to Tony's, we cannot agree with Special Term's decision to order the Town of Islip to award the contracts to the respective petitioners. The notice to bidders specifically states that the "Town Board reserves the right to reject any or all bids * * * except with respect to the time limitation for submission of bids, and to accept the bid or part thereof which it deems most favorable to the Town after all bids have been examined and checked."

Under the circumstances of this case we believe that all bids should have been rejected and the matter submitted for rebidding (see *Blanford Land Clearing Corp. v Davidson,* 62 AD2d 1007, 1009). By ordering the Town of Islip to enter into the contracts with the petitioners, at significant added cost to the town's taxpayers, Special Term was effectively substituting its judgment for that of the town board (see 10 McQuillan, Municipal Corporations [3d ed], § 29.83, p 425). It is our belief that the interests of justice and the efficacy of the competitive bidding statute will best be served by having the Town of Islip reopen bidding for the subject collection, removal and disposal contracts.

LAZER, J. P., MANGANO and GIBBONS, JJ., concur.

Appeals from two judgments of the Supreme Court, Suffolk County, both dated August 27, 1981, dismissed as

academic, without costs or disbursements. Said judgments were superseded by an order of the same court, dated September 14, 1981, which was entered upon reargument.

Order modified by deleting the second decretal paragraph thereof and substituting therefor a provision that upon reargument the fourth and fifth decretal paragraphs of the two judgments dated August 27, 1981 are vacated and the original determination is otherwise adhered to. As so modified, order affirmed insofar as appealed from, without costs or disbursements, and matter remitted to the Town Board of the Town of Islip for further proceedings consistent herewith.