■ SQUARE PARKING SYSTEMS, INC., Appellant-Respondent, v METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents-Appellants. — Order of the Supreme Court, New York County (Ryp, J.), entered July 19, 1982, which dismissed plaintiff's first cause of action; denied the motion to dismiss the second cause of action; directed plaintiff to pay arrears of $59,999.94 and $33,333.33 per month for use and occupancy of the subject premises as a condition to staying the Civil Court action brought by Metropolitan Transpor-

tation Authority to evict plaintiff from the premises in question; and enjoined defendants from implementing the lease for the years 1981-1982 granted to defendant Builtland Partners by the other defendants, modified, on the law and the facts, to dismiss the second cause of action as moot, to dissolve the stay of the Civil Court action and the injunction, and to remand the matter to the Supreme Court to determine the value of the use and occupation of the premises by plaintiff, and otherwise affirmed, all without costs. Defendant, Consolidated Rail Corporation (Conrail), is the owner of the Grand Central Terminal parking garage which is located under the building formerly known as the Biltmore Hotel. Conrail has leased the garage to Metropolitan Transportation Authority (MTA) for a term expiring in 2032. Plaintiff had been the sublessee of the garage for a term expiring on December 31, 1980. In February, 1980, MTA-Conrail solicited bids from 13 garage companies for a five-year lease of the garage. The solicitation offer reserved to MTA-Conrail "the right to reject or negotiate any and all bids without assigning any reason therefor and also the right to waive any informalities in a proposal". Since title 11 of the Public Authorities Law does not require public bidding on MTA contracts, no issue is raised, nor can any be raised, on the framing of the solicitation offer in this fashion. Three bids were received. Plaintiff bid $331,000 for the first two years and $341,000 for the remaining three or, alternatively, $311,615 annually or 65% of gross receipts, whichever is the higher. Builtland Partners (Builtland), the owner of the building above the garage, bid $310,000 or 65% of gross receipts, whichever is the higher. Regency Garage Corp., the third bidder, bid $310,000 plus 40% of gross receipts above $500,000. Since the amounts payable on a percentage basis would depend upon receipts, each bidder was required to submit a schedule of fees to be charged. Builtland's fees were 10% higher than those submitted by plaintiff and calculations by the MTA-Conrail staff indicated that under certain circumstances the Builtland bid would be more favorable to MTA-Conrail than that of plaintiff. In April, 1980, approximately a month after the bids had been submitted, MTA-Conrail learned that some seven months earlier, plaintiff had increased its parking fees without notice or approval by MTA-Conrail despite a provision in plaintiff's lease that such notice and approval was required. This required further computation by the MTA-Conrail real estate committee and a request to Builtland that it submit a more particularized schedule of fees so that appropriate comparison might be made and the best offer determined. Builtland submitted the particularized schedule of fees, as requested. However, it threw in an additional fillip. It offered to purchase MTA's leasehold interest for $2,000,000. The entire matter was referred back to the MTA-Conrail real estate committee which in May, 1980 recommended to the MTA board of directors that plaintiff's bid be accepted. The offer by Builtland to purchase MTA's leasehold interest was not considered. Thereafter, on June 11, 1980 counsel for Builtland contacted the real estate committee and confirmed that Builtland's interest in purchasing the leasehold was real. All of this was reported at the June meeting of the MTA board of directors which determined to postpone any award of a lease of the garage pending investigation of a possible sale of the MTA leasehold. The real estate committee evaluation was not ready for the July meeting of the MTA board and, again, the award of the lease to the garage was postponed. In August, 1980, the real estate committee notified Builtland that its offer of $2,000,000 was far too low and suggested a price of $7,500,000. At a meeting held in late August among representatives of Builtland, MTA and Conrail, Builtland noted that the time remaining before the expiration of plaintiff's lease was too short to complete negotiations and iron out details and suggested that it be awarded a two-year lease at a fixed

rental of $400,000 per annum with an option to purchase. The MTA board at its public meeting held on September 4, 1980 rejected Builtland's offer. However, it agreed that more time was needed to consider a sale of its *leasehold interest.* Accordingly, it determined to reject all bids for the five-year lease, and to solicit new bids for a two-year lease from the same 13 garage companies which had been invited to submit bids initially. It is particularly noteworthy that in the solicitation for bids MTA expressly reserved to itself this right to reject bids "without assigning any reason therefor". One week later it returned the deposits which had been required as a condition of the original bids. On September 16, 1980 it solicited bids from the 13 companies for two-year leases. By letter dated September 22, 1980, addressed to Conrail, plaintiff refused to bid for the two-year lease asserting that it had been the *successful bidder* under the March bidding format and, by consequence, was the tenant of the garage premises for a five-year term commencing January 1, 1981. On September 26, 1980, it wrote to the other 12 garage companies invited to submit bids for the two-year lease and indicated its intention to assert its "rights" against all appropriate parties. The only response received by MTA-Conrail to its invitation to bid on the two-year lease was from Builtland[*] which bid a flat rental of $400,000 per year. At its October public meeting the MTA Board awarded the two-year lease to Builtland. On December 31, 1980 plaintiff filed a notice of claim with MTA. On the same day it commenced this proceeding. The complaint alleges two causes of action. The first cause seeks a declaration that plaintiff has a valid and binding five-year lease commencing January 1, 1981 and a mandatory injunction requiring MTA-Conrail to execute and deliver such lease to plaintiff; while the second cause seeks a declaration that any lease executed pursuant to the second solicitation for bids on September 16, 1980 be declared void and unenforceable and an award of punitive damages in the sum of $5,000,000. On February 13, 1981 MTA commenced a summary proceeding in the Civil Court against plaintiff seeking to evict it as a holdover. Plaintiff then moved, in this action, to enjoin the eviction proceeding and to bar MTA from acting to exclude it from possession. MTA-Conrail cross-moved for an order dismissing the complaint, evicting plaintiff from the garage, requiring plaintiff to account for the gross receipts received in the operation of the garage and directing plaintiff to pay to MTA the difference which it would have received under the award of the lease to Builtland and the rent paid by plaintiff and awarding MTA-Conrail compensatory and punitive damages. Builtland thereafter moved to dismiss the complaint against it and for counsel fees and damages. Special Term granted the motions by defendants to the extent of dismissing the first cause of action. It denied so much thereof as sought dismissal of the second cause of action. It *granted plaintiff's motion to the extent of staying* enforcement of the two-year lease made by MTA-Conrail to Builtland and the Civil Court holdover proceeding upon condition that plaintiff pay to MTA-Conrail the sum of $59,999.94 as arrears for the period January 1, 1981 to June 30, 1982 and the sum of $33,333.33 monthly thereafter "as reasonable use and occupancy" and enjoined implementation of the two-year lease to Builtland. Both sides have appealed. We are in agreement that the first cause of action was properly dismissed. While MTA-Conrail was not under any legislative constraint to negotiate the lease for the garage by solicitation of bids, once it undertook to do so it was required to act fairly with respect to all bidders. (*S.S.I. Investors v Korea Tungsten Min. Co.,* 80 AD2d 155.) The interjection of a new element by Builtland — the offer to purchase the MTA leasehold *prior* to the award of any

---

[*] One of the 13 garage companies invited to bid, Meyers Parking System, indicated its interest in bidding for the two-year lease. However, it refrained from doing so "due to possible legal entanglements".

lease required the MTA board to reconsider and reappraise the entire situation for, as a public body it was required to obtain terms most beneficial to the public (*Orelli v Ambro*, 41 NY2d 952). Thus, the delay in approving any bid until an appropriate study was made was proper (cf. *Matter of Fischbach & Moore v New York City Tr. Auth.*, 79 AD2d 14). Finding the time too short to determine whether lease or sale would be most beneficial, it decided to reject all bids and seek a shorter lease for the garage. Its decision to reject all bids cannot be faulted. That plaintiff continued to rely on its initial bid and refused to participate in the second round of bidding is something which cannot be laid at the door of MTA-Conrail. The second cause of action seeks a declaration that any lease executed pursuant to the second solicitation of bids, the solicitation for a lease commencing January 1, 1981 and expiring December 31, 1982, is void and unenforceable. The passage of time has made this question academic. Hence, we dismiss this cause as moot. With the dismissal of both causes of action no basis exists for continuing the stay of the Civil Court action to evict, or the injunction. Accordingly, we vacate both. There remains only a single question, the value of the use and occupancy of the garage for the period that it has been and continues to be occupied by plaintiff. We are aware that Special Term fixed that at the amount which would have been paid by Builtland under the award of the two-year lease to it. That amount may have been too little or too much. Accordingly, we remand that issue to Special Term to determine the value thereof for the period commencing January 1, 1981 and thereafter. Of course, plaintiff will be entitled to credit on the amount found to be due for any sums already paid. Concur — Kupferman, J. P., Sullivan, Carro, Silverman and Bloom, JJ.