■ In the Matter of CONDUIT AND FOUNDATION CORPORATION, Respondent, v METROPOLITAN TRANSPORTATION AUTHORITY et al., Appellants. — In a proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the Metropolitan Transportation Authority and the New York City Transit Authority to reject all bids on a certain public works contract, the appeal is from a judgment of the Supreme Court, Kings County (Aronin, J.), dated March 13, 1985, which granted the petition, permanently enjoined the appellants from conducting a second round of bidding, and directed them to award the contract to petitioner at its bid price.

Judgment modified, on the law, to the extent that the appellants are directed to award the contract to petitioner at the negotiated bid price of $131,224,741. As so modified, judgment affirmed, with costs to petitioner.

Appellants received three bids on the "Zone II Contract" to perform extensive rehabilitative and reconstructive work on a portion of New York City's subway system. Petitioner was the lowest bidder, with a bid falling within the advertised estimate cost range. Subsequent to receiving the bids appellants met separately with all three bidders, allegedly to discuss why the bids were so high and to explore methods of lowering the cost of the project. Several days after the bids had been received and the meetings held, the second lowest bidder, a joint venture consisting of Fischbach & Moore, Inc. and two other companies (hereinafter Fischbach), sent a letter, dated December 6, 1984, to the appellants stating that it understood that the bids were in excess of the estimated costs, and that it would be happy to discuss with them certain revisions in the contract documents which could result in significant savings. On December 17 petitioner again met with the appellants. Although petitioner was told that its bid was too high and the appellants were contemplating rejecting all bids, it was also advised that it was

technically and financially qualified to do the job. As a result of negotiations occurring between the parties on December 17, petitioner actually lowered its price by $2,000,000, as evidenced by its letter dated December 26, 1984. However, on December 27, 1984, the appellants' engineering department recommended that all bids be rejected, and that recommendation was approved on January 2, 1985. A notice of advertisement for a new bid, dated January 23, 1985, was circulated. The notice contained a provision alerting prospective bidders that changes in the contract specifications might be forthcoming.

Petitioner commenced this CPLR article 78 proceeding to enjoin the appellants from conducting a second round of bidding, and to obtain a judgment directing them to award petitioner the contract. By judgment dated March 13, 1985, Special Term granted the petition. The court found that the appellants had acted arbitrarily and capriciously by rejecting all bids in the hopes that a rebid would produce more favorable results, particularly where there were individualized postbid communications between the appellants and all three bidders. We modify that judgment only insofar as it orders the appellants to award the contract to petitioner at its original bid price instead of its negotiated bid price.

Public Authorities Law § 1209 (1) and General Municipal Law § 103 (1) require that the award of a contract for public work must go to the lowest responsible bidder. Both statutes contain provisions allowing a public agency to reject all bids if, in its discretion, it deems it to be in the interests of the public to do so. In order to obtain the best work at the lowest price through the competitive bidding system, however, the agency must deal with bidders fairly, honestly, and without favoritism (*see, Matter of Superior Hydraulic v Town Bd.*, 88 AD2d 404, *appeal dismissed* 58 NY2d 824; *Matter of Delta Chem. Mfg. Co. v Department of Gen. Servs.*, 81 AD2d 507). "[I]n the long run if not in each individual case, the public will receive the best value if its officials consistently adhere to a policy of impartiality and fair dealing in letting public contracts" (*Matter of Fischbach & Moore v New York City Tr. Auth.*, 79 AD2d 14, 19-20, *lv denied* 53 NY2d 604).

While we recognize that generally the probability of obtaining a lower contract price on rebid, with or without a change in contract specifications, constitutes a rational basis for rejecting all bids and commencing a rebid (*see, Orelli v Ambro*, 41 NY2d 952; *Square Parking Sys. v Metropolitan Transp. Auth.*, 92 AD2d 782; *Matter of Law Bros. Contr. Corp. v O'Shea*, 79 AD2d 1075), where favoritism and impropriety are present, such actions cannot be condoned. If they were, there would be a very

real possibility that legitimate bidders would be reluctant to participate in sealed biddings in the future, and fair competition would be diminished (*Matter of Superior Hydraulic v Town Bd.*, 88 AD2d 404, *appeal dismissed* 58 NY2d 824, *supra; Matter of Fischbach & Moore v New York City Tr. Auth., supra*). At bar, the bidding process was contaminated by several instances of impropriety which cast serious doubt on the integrity of the procedure employed and which cannot be condoned.

The appellants improperly engaged in separate postbid communications with each of the three bidders. Although the appellant Transit Authority's vice-president and chief engineer, George Ziegler, averred that these communications were not in the nature of negotiations, his credibility has been severely undermined on this record. Throughout most of this proceeding, Ziegler asserted that the advertised estimated cost range (petitioner's bid was within this range) constituted the total budget costs, and that the engineer's estimate of the contract cost was actually approximately $20 million less than the advertised estimated cost. After being confronted with the Transit Authority's own interoffice memorandum, which directly contradicted Ziegler's assertion, the appellants abandoned their initial argument and interjected the new allegation that the estimated figures published in the notice of advertisement were in error. This alleged error, involving approximately $20 million, is explained in a conclusory and nebulous manner. The claim of error is founded upon several references to places in the record where the allegedly correct engineer's estimate is found. These references are either to unsubstantiated allegations by Ziegler, or to documents prepared by the Transit Authority subsequent to its decision to reject all bids. The only evidence supporting the appellants' contention that the engineer's estimate was actually $100 to $120 million is a publication put out by the Transit Authority and sent to potential bidders in July 1984. It states the estimated range of the Zone II contract to be $100 to $120 million. However, this publication does not refute the evidence contained in a memorandum from the Transit Authority's division engineer to its deputy chief engineer, which states that as of *August 9, 1984* the engineer's estimate on the Zone II contract is $137,068,765, and that the recommended range to be published in *Brown's Letters,* a construction industry publication, is $120 to $140 million. Furthermore, this figure was published in at least two issues of *Brown's Letters,* dated September 7, 1984 and November 13, 1984, respectively. The appellants' allegation that this was an error strains credulity. Under these circumstances we are extremely skeptical concerning the assertion that no postbid negotiations took place. The dissenters treat

these meetings as innocuous. We cannot agree, and suggest that if these meetings were solely for the purpose of obtaining information to aid the appellants in lowering the cost of the Zone II contract, the proper procedure to be followed would have been to hold one meeting for all bidders to engage in a general discussion, instead of private meetings with each bidder. Thusly, the appearance of impropriety could have been avoided.

Postbid negotiations with the lowest bidder are generally held to be proper (*Matter of Fischbach & Moore v New York City Tr. Auth.,* 79 AD2d 14, 20, *lv denied* 53 NY2d 604, *supra*). However, negotiations with bidders other than the lowest bidder, such as those that may have been conducted herein between the appellants and Fischbach, were expressly disapproved of by this court (*see, Matter of Fischbach & Moore v New York City Tr. Auth., supra; accord, Janvey & Sons v County of Nassau,* 90 AD2d 807, *revd on other grounds* 60 NY2d 887). Such postbid negotiations or the appearance of such negotiations, which cast doubt upon the fair competition goals of the entire public contract bid procedure, simply cannot be condoned. Clearly, even the appearance of such improprieties would cause a responsible bidder to hesitate before participating in another sealed bidding with the public agency involved. This would result in contravention of the legislative intent to obtain the best work at the lowest price through the competitive bidding system, as expressed in Public Authorities Law § 1209 and General Municipal Law § 103.

We are also troubled by Fischbach's letter to the appellants which intimated that it would be able to offer them significant savings if revisions in the contract documents were made and a rebid was held. The appellants allege that Ziegler instructed his staff on December 7 to prepare a recommendation to reject the bids and the Fischbach letter was not received until December 10. The evidence, however, belies this assertion. The actual recommendation to reject all bids was dated December 27. Furthermore, Ziegler met with petitioner on December 17 to negotiate with petitioner, and to offer it an opportunity to lower its bid. At that time, by Ziegler's own admission, he informed petitioner that he would recommend that petitioner be found qualified to do the work, although the appellants were contemplating rejection of all of the bids. Ziegler's actions of December 17 were not those of a man who had determined on December 7, 10 days earlier, that all bids should be rejected.

Nor can we ignore the poor prior history of Fischbach & Moore, Inc. with regard to bidding on public contracts. Fischbach & Moore, Inc. was convicted of bid rigging in the Federal District Court for Pennsylvania, and as a result was debarred in

April 1984 from receiving awards by appellants. Ironically, a joint venture, which included Fischbach & Moore, Inc., was permitted to bid on the Zone II contract in the interests of a competitive bidding, because it is one of the few concerns able to handle such an expansive project. By letter dated February 5, 1985 the General Services Administration notified Fischbach's attorney that it was going to recommend that his client be debarred from bidding on Federal projects, due to convictions for antitrust violations. Although this poor prior history is not determinative of the issues presented herein, we cannot ignore this history in considering the totality of the circumstances in this case. We also express our concern about the fact, conceded at oral argument, that Fischbach was the only entity to submit a bid on the second round of bidding.

The record demonstrates, at a minimum, the appearance of impropriety on the part of the appellants. The dubious dealings contained in the record and the possible detrimental effect such dealings might have on the broad interest of the public in the entire public bidding process require us to find that the appellants acted arbitrarily and capriciously in rejecting all bids.

It is unfortunate that the appellants' unacceptable approach to the entire bidding process may result in a greater expenditure of taxpayer funds than would have occurred had they properly determined in advance what the job required and then bid out the job in an acceptable fashion. We simply note that it is in the interests of the general public and the continued effectiveness of the competitive bidding system in obtaining the best contract at the lowest price that we seek to promote uniformity, predictability and fairness in that system's operation by refusing to condone the appellants' actions, which, as evidenced by the record, were tainted by manipulations and improprieties.

As to petitioner's request for a judgment directing the appellants to award it the contract, the relief sought is in the nature of mandamus, which generally does not lie where the act sought to be compelled is discretionary, as it is here (see, Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d 88; Matter of Lisa v Board of Elections, 83 AD2d 949). While we are reluctant to substitute our judgment for that of the public agency, we will do so when, as here, there is no adequate alternative to remedy the concerns about dishonesty and bad faith that are present (cf. Matter of Progressive Dietary Consultants v Wyoming County, 90 AD2d 214; General Elec. Co. v New York City Tr. Auth., NYLJ, Sept. 25, 1980, p 15, col 1). The ordering of a rebid here would only serve to condone the improprieties present. In any event, the appellants concede that petitioner is technically and financially qualified, and that it was the lowest bidder.

Finally, we see no reason not to allow the appellants the benefit of their proper negotiations with petitioner, the lowest bidder, and direct them to award petitioner the contract at the reduced negotiated bid price. Thompson, O'Connor and Weinstein, JJ., concur.

Niehoff, J., dissents and votes to reverse the judgment and to dismiss the proceeding, with the following memorandum, in which Lazer, J. P., concurs: We agree with the majority that by statute (Public Authorities Law § 1209 [1]; General Municipal Law § 103 [1]), the Metropolitan Transit Authority and the New York City Transit Authority (the Authority) are authorized to reject all bids on a public works contract if, in its discretion, the Authority deems it to be in the interests of the public to do so.

We also agree with the majority that the probability of obtaining a lower contract price on rebid, with or without a change in specifications, constitutes a proper basis for rejecting all bids and commencing a rebid (*see, Matter of Tri-State Aggregates Corp. v Metropolitan Transp. Auth.,* 108 AD2d 645; *Matter of Knickerbocker Reporting v New York State Dept. of Public Serv.,* 78 AD2d 728, *lv denied* 52 NY2d 705; *Matter of Carter v Blake,* 63 AD2d 760, *lv denied* 45 NY2d 705; *Matter of Law Bros. Contr. Corp. v O'Shea,* 79 AD2d 1075; *Square Parking Sys. v Metropolitan Transp. Auth.,* 92 AD2d 782; *Orelli v Ambro,* 41 NY2d 952).

We also agree with the majority that the bidding process is designed to eliminate favoritism and similar evils. "[T]he obvious purpose of [the competitive bidding] statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption. They 'are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably *with sole reference to the public interest*' (10 McQuillan [Municipal Corporations (3d ed)] § 29.29, p. 322; emphasis added)" (*Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187, 193; *see also, Le Cesse Bros. Contr. v Town Bd.,* 62 AD2d 28, 31, *affd* 46 NY2d 960; *Matter of Superior Hydraulic v Town Bd.,* 88 AD2d 404, 407, *appeal dismissed* 58 NY2d 824; *Spencer, White & Prentis v Southwest Sewer Dist.,* 103 AD2d 802, 803).

We note that the majority does not hold that the Authority is precluded from seeking a rebid because petitioner has demonstrated that the Authority has been guilty of "favoritism, improvidence, extravagance, fraud or corruption". The linchpin of the majority opinion is found in these words, "[a]t bar, the bidding process was contaminated by several instances of impropriety which cast serious doubt on the integrity of the procedure

employed and which cannot be condoned". In our judgment, nothing which the Authority did following receipt of the bids constitutes a basis for this court to strip the Authority of its statutory power to rebid. What this record establishes is that the Authority, charged with the obligation to expend taxpayer's money, has sought to do so in a fiscally responsible manner. Nowhere in the majority opinion is the finding made that the Authority has been guilty of "favoritism, improvidence, extravagance, fraud or corruption". At most, the majority uses language which hints at it. In a word, the majority's attack on the Authority's conduct is founded on nothing more substantial than innuendo.

We cannot agree that the Authority's postbid communications and discussions with the three bidders constituted unfair and improper practices which tainted the impartiality of the competitive bidding process. The Authority's express purpose in meeting with each of the three bidders was to determine why the submitted bids were substantially higher than the final engineer's estimate of the work and to ascertain whether substantial revisions in the scope of the Zone II project were necessary in order to realize requisite cost savings. We find no evidence in the record to support a conclusion that the Authority exhibited favoritism or partiality towards the second and third bidders in the postbid communications or that the Authority was attempting to jeopardize petitioner's status as the lowest bidder to the advantage of any other bidder (*see, Matter of Fischbach & Moore v New York City Tr. Auth.*, 79 AD2d 14, 20, *lv denied* 53 NY2d 604).

Had the Authority been a private company, or even a public agency not bound by the competitive bidding laws, it could have engaged in all manner of negotiations both before and after receiving estimates in order to obtain the best possible deal. Surely, the Authority, which is required to proceed by public bidding, is not to be placed in a straitjacket and shorn of all power to obtain favorable terms, particularly when dealing with multi-millions of the taxpayers' dollars. The bidders cannot be allowed to call the tune. If postbid discussions are considered by the Authority to be the means by which the best interest of the public may be served, the Authority may engage in them without being charged with impropriety and without being compelled to accept a bid it deems not to be in the best interest of the public. On this point, we note that this court's holding in *Matter of Fischbach & Moore v New York City Tr. Auth.* (*supra*) does not prohibit any postbid discussions with the bidders. Rather, the *Fischbach* court merely reiterated the general principle that a

municipal agency may not engage in fraudulent or unfair activity with respect to an award of a public contract or exhibit favoritism towards any of the bidders in the bidding process.

In sum, postbid discussions do not, in and of themselves, impugn the integrity of the bidding process. Only when such discussions result in favoritism, improvidence, extravagance, fraud or corruption, do they have such effect.

Indeed, the majority seems to acknowledge that postbid discussions with bidders are not per se objectionable. Thus, the majority states "[w]e * * * suggest that if these meetings were solely for the purpose of obtaining information to aid the appellants in lowering the cost of the Zone II contract, the proper procedure to be followed would have been to hold one meeting for all bidders to engage in a general discussion, instead of private meetings with each bidder. Thusly, the appearance of impropriety could have been avoided".

Even if it can be said that the Authority gave the appearance of impropriety, a point that is debatable, we are not here concerned with "the appearance of impropriety". We are concerned with whether the proof shows that in rejecting all bids the Authority was guilty of favoritism, improvidence, extravagance, fraud or corruption. The fact that it might have been wiser, from an appearance standpoint, for the Authority to have met with all bidders at one time than with each of them separately is not the issue. The Authority's wisdom or lack of it in meeting separately with the bidders is too slender a reed on which to base a decision in this case. The Authority had the right as well as the power to meet with the bidders and to discuss the problems perceived by the Authority, and no wrongdoing on the part of the Authority has been demonstrated.

The fact that the second bidder wrote the Authority a letter indicating its willingness to meet with the Authority to discuss possible revisions in the contract specifications which would result in significant savings does not constitute evidence of wrongdoing by the Authority. Indeed, the Authority did not act on that letter and did not hold the meeting requested in that letter. As far as the record shows, the only bidder with whom any price negotiations occurred was petitioner, which agreed to reduce its bid by $2,000,000. Interestingly, the majority finds nothing offensive about those negotiations since it is modifying the judgment of Special Term to hold the low bidder to the postbid negotiated reduction in price.

While petitioner's bid was within the cost range estimate of the Zone II contract as published by the Authority, this fact, in and of itself, does not mandate acceptance of the bid by the

Authority. There is no evidence to support a conclusion that the Authority set out to willfully deceive any of the bidders when it indicated in the notice of advertisement and similar publications that the cost range estimate of the project was between $120,000,000 to $140,000,000. The Authority maintains that it made an error. That error does not establish wrongdoing and should not limit the Authority's statutorily mandated discretion in deciding whether the submitted bids were reasonable, acceptable and in accordance with the public interest. Such a judicial gloss on the statutory discretion of a municipal agency would clearly contravene the purpose of the competitive bidding statutes since it would permit a bidder to take advantage of an oversight or mistake of the municipal agency at the expense of the public interest.

Moreover, even assuming that the figures as published were correct, as the majority asserts, we cannot agree that the Authority's rejection of the bids which coincided with these figures was in excess of or an abuse of its statutory power. In a competitive bidding situation, "the lowest bidder does not obtain a vested or property interest in the contract merely by reason of the fact that he submitted the lowest bid * * * If the grant of power to the municipal officers authorizes the rejection of any bid, the contract need not be let to the lowest bidder, and the fact that it is not so let does not indicate fraud. Where discretion is conferred to reject 'any and all bids', the courts will not interfere with the discretion unless exercised with a fraudulent intent, to the injury of the party complaining, and where the injury is to a vested right" (10 McQuillin, Municipal Corporations § 29.77, at 413-414 [3d ed]). Thus, "[o]nce a rational basis for th[e] determination [not to award the contract to any or all bidders] is found to exist, the court's power to interfere in the award of a contract arising out of the bidding process is ended. *Reasonable men may differ as to criteria which the municipal agency adopts in determining the responsibility of the bidders, but it is the reason of the municipal agency, not the reason of the court, which prevails"* (*Abco Bus Co. v Macchiarola,* 75 AD2d 831, 833 [dissent by Hopkins, J. P.], *revd* 52 NY2d 938 *for reasons stated in the dissenting opn at App Div, cert denied* 454 US 822, emphasis added; *see also, Matter of Kayfield Constr. Corp. v Morris,* 15 AD2d 373, 378).

Accordingly, if the municipal agency decides, in its discretion, that the public interest necessitates the rejection of all bids for financial, budgetary or similar reasons, the courts will not interfere with its determination unless, as we have said, it can be shown that there was favoritism, improvidence, extravagance, fraud or corruption involved on the part of the municipal

agency. In the instant case, the Authority concluded that all the bids should be rejected because substantial revisions in the Zone II contract could be made to realize significant cost savings without reducing the scope of the over-all project. This court lacks the power to substitute its judgment for that of the Authority and to hold, on the facts of this case, that the Authority has somehow forfeited its right to exercise its best judgment.

As our court wrote in *Matter of Fischbach & Moore v New York City Tr. Auth.* (*supra,* at p 21), "[t]he crucial question * * * is whether the municipal agency, in seeking to conserve public funds, has abided by those rules designed to promote competition and to avoid favoritism and corruption. If it has, then the requirements of the competitive bidding law are satisfied". They were satisfied in this case.