■ STATE OF NEW YORK, Appellant, v ATLANTIC AUDIO-VISUAL CORPORATION, Respondent. (And a Related Proceeding.)— Main, J. Appeal from that part of an order of the Supreme Court at Special Term (Connor, J.), entered February 7, 1985 in Albany County, which denied plaintiff's motion to dismiss defendant's affirmative defenses and for summary judgment.

In July of 1980, the State Office of General Services (OGS) advertised for bids for the installation of an "Audio-Visual Presentation System" in three lecture halls on the campus of the State University of New York at Stony Brook. Defendant, a manufacturer and provider of this type of equipment, submitted a bid in the amount of $89,862. Only one other bid, that of Sound Systems, Inc., was submitted.* The bids were opened on August 22, 1980 and defendant was the low bidder. Three days later, on August 25, 1980, defendant notified OGS that a transpositional error had been made involving the first two digits of the bid figure and that the amount should have read $98,862, and requested that the correction be made. Receipt of the request was promptly acknowledged by OGS, which advised defendant that it was considering it. However,

---

* It appears that Sound Systems, Inc. was permitted to submit a corrected bid after it was discovered that its bid was for one system instead of the required three.

it was not until November 26, 1980, some 93 days after the bids were opened, that defendant was advised that the correction would not be permitted. Defendant maintains that it informed plaintiff two or three days after the bid opening that it could not perform at the price stated on the bid, and further claims that, in November and December of 1980, it advised OGS that the bid could not be maintained after the end of the year 1980. According to the general specifications applicable to bid solicitations, a bid could not be revoked for 60 days following the opening of bids and, thereafter, any bid withdrawal had to be in writing. On January 13, 1981, almost five months after the bid opening, a "Notice of Contract Award" was sent to defendant, which responded promptly by advising that, due to plaintiff's extended delay in awarding the contract, it would be unable to perform at the bid price. Various attempts on defendant's part in late January 1981, including a suggestion that it would perform if a 10% inflationary adjustment could be arrived at, were rejected by OGS. Soon thereafter, OGS readvertised for new bids and, ultimately, the contract was awarded to another concern upon a bid of $119,888.

In September of 1982, plaintiff commenced the instant action for breach of contract, seeking to recover $30,026, the difference between defendant's bid and the final successful bid. Defendant, in its answer, asserted the following six affirmative defenses: (1) that the failure of OGS to award the contract within 60 days released defendant from its bid; (2) that it had committed a transpositional error in the amount of the bid; (3) that the failure of OGS to approve the 10% adjustment was arbitrary and capricious; (4) that since it had not received a purchase order, it was not required to comply; (5) that it was an arbitrary and capricious violation of the public interest to accept a higher bid price; and (6) that plaintiff had failed to mitigate damages. When plaintiff moved to strike the defenses and for summary judgment, Special Term denied the motion, thus giving rise to this appeal by plaintiff.

Initially, we observe that the third, fourth and fifth defenses outlined above are either not valid defenses or do not present material issues of fact preventing the grant of summary judgment; accordingly, they should have been dismissed. The sixth defense would not impair the grant of summary judgment on the issue of liability. However, the first and second defenses, which, in sum, claim that the offer had lapsed and that a unilateral mistake had been committed by defendant, preclude the grant of summary judgment at this stage. It is well settled that summary judgment may be granted only if

the moving party establishes his cause or defense by setting forth evidentiary facts sufficient to entitle that party to a judgment as a matter of law (CPLR 3212 [b]; *Zuckerman v City of New York,* 49 NY2d 557, 562).

With respect to the second affirmative defense of mistake, the courts of this State have long recognized that one who makes a bid based on an honest and unintentional mistake can, in the interest of equity, be relieved from his contractual obligation *(see, People v Rouse Constr. Corp.,* 26 AD2d 405, 407). While a bid is a binding offer to make a contract, a bid may be withdrawn in the case of a unilateral mistake by the bidder where the mistake is promptly made known to the other party to the transaction and (1) the mistake relates to a material aspect of the contract, (2) the mistake is of such great magnitude that enforcement of the contract would be unconscionable, (3) the mistake occurred notwithstanding the exercise of reasonable care by the mistaken party, and (4) the granting of relief would not have resulted in substantial prejudice to the party who did not make the mistake *(see, City of Syracuse v Sarkisian Bros.,* 87 AD2d 984, *affd* 57 NY2d 618; *Balaboan-Gordon Co. v Brighton Sewer Dist. No. 2,* 67 Misc 2d 76, 79, *affd* 41 AD2d 246; 13 Williston, Contracts § 1573, at 489 [Jaeger 3d ed]; Ann., 52 ALR2d 792, 793-794). The issue as to whether these factors have been established cannot be decided upon this record, and their proper resolution must await a trial.

In addressing the first defense, we perceive the presence of other questions of fact. Plaintiff contends that it is uncontradicted that defendant did not withdraw its bid. Plaintiff arrives at this conclusion because of defendant's concession that it did not do so in writing as is referred to in the general information section of the "Group Specification" sent to prospective bidders. However, it is not clear whether the withdrawal-in-writing requirement is enforceable, for its appears to be only a part of the preliminary negotiations between the parties. An invitation to enter into negotiations is not an offer which, together with the acceptance thereof, forms a contract *(see,* 21 NY Jur 2d, Contracts, § 35, at 453-454). If the clause is unenforceable, there is evidence to the effect that the bid was orally withdrawn on more than one occasion. Moreover, even assuming the enforceability of the clause and that a valid withdrawal did not occur, plaintiff delayed in accepting the bid until January 13, 1981, almost three months after the bid became revocable and after plaintiff had been advised by defendant that the bid could not be maintained beyond the

year's end. No authority need be furnished to support the proposition that an offer not promptly accepted may be terminated by the passage of time alone. Where no time is specified for the offer's duration, it must be accepted within a reasonable time. What constitutes a reasonable time is a question of fact depending on all of the circumstances (see, 21 NY Jur 2d, Contracts, § 52, at 468-469; see also, Oliver v Wells, 229 App Div 356, 359, affd 254 NY 451). Whether, under the circumstances presented here, three months was a reasonable time is a fact question requiring resolution at a trial. Accordingly, Special Term was correct in denying plaintiff's motion for summary judgment.

Order modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion to dismiss defendant's third, fourth and fifth affirmative defenses; motion granted in such respect and said affirmative defenses dismissed; and, as so modified, affirmed. Mahoney, P. J., Main, Mikoll and Yesawich, Jr., JJ., concur.