OPINION OF THE COURT
Carmen R. Parenti, J.
The plaintiff instituted this action against the defendant, Palmyra-Macedon Central School District, seeking reformation or rescission of a general construction contract. The defendant school district has counterclaimed for affirmative *37 relief directing the plaintiff to execute the contract. The intervenor-defendant, David Christa Construction, Inc., after having been granted the right to intervene with the consent of both other parties, demands judgment on its cross claim awarding the contract to it as the next lowest bidder.
The trial of this action took place on March 20, 1989, and from the testimony of the several witnesses presented, the court makes the following findings of facts and conclusions of law:
On February 9, 1989, Iversen Construction Corporation (Iversen) submitted a bid to the Palmyra-Macedon Central School District (School District) for construction work on a public project. Iversen also provided a bid bond as required by the "Instructions to Bidders” in the amount of 5% of the submitted bid. The Iversen bid was in the amount of $5,517,267. The second lowest bid submitted was that of David Christa Construction, Inc. (Christa) in the amount of $6,420,000. Six additional bids were submitted on the project ranging from $6,522,000 to $7,395,000.
At the time of the opening of the bids on February 9, 1989, the architects from the architectural and engineering firm of Beardsley, Beardsley, Cowden & Glass were present. The two architects present at the bid opening were surprised by the low bid of Iversen and discussed the possibility that there might be a bidding error.
Later on February 9, 1989, Iversen discovered a material error in its computations on the bid which resulted in a submitted bid which was $696,232 (plus overhead and profit) lower than intended. The mistake occurred when one sheet of subcontractor bids was inadvertently not included in the total bid.
Christopher Iversen, president of Iversen Construction Corporation, immediately began notifying the architectural firm of Beardsley, Beardsley, Cowden & Glass (employed by the School District) and the School District of the error. They submitted to the architect and School District documentation substantiating the manner in which the error occurred. Iversen immediately sought withdrawal of its bid because of the obvious inadvertent error.
Although notified of the error, the School District did not respond but rather, on February 15, 1989, notified Iversen that it was awarding the contract for the submitted bid of $5,517,267. After being advised by letter of the position of the *38 School District, the plaintiff, Iversen, again made efforts through counsel to withdraw the bid. Being unsuccessful in that regard, it thereafter instituted this action for reformation or rescission of the bid contract. The plaintiff also seeks cancellation of the underlying bid bond.
It is conceded by the parties that the Iversen bid was an honest mistake and not the result of any fraud, collusion or other impropriety on the part of Iversen or any of the parties. It was clearly a clerical-arithmetical error of the type which our courts have found as justifying the granting of equitable relief in the nature of rescission or reformation. It would be unconscionable under the circumstances of this case to require the mistaken bidder to perform the contract at a price in excess of $700,000 less than intended. (Balaban-Gordon Co. v Brighton Sewer Dist. No. 2, 41 AD2d 246 [4th Dept 1973]; Derouin’s Plumbing & Heating v City of Watertown, 71 AD2d 822 [4th Dept 1979]; Jobco, Inc. v County of Nassau, 129 AD2d 614 [2d Dept 1987]; State of New York v Atlantic Audio-Visual Corp., 118 AD2d 998 [3d Dept 1986].)
In the Derouin’s Plumbing & Heating case (supra, at 822), the court permitted equitable relief where "Leon Derouin made a clerical error in transposing the total amount of his bid from the recapitulation sheets to the bid proposal sheet.” This situation is similar to that now before the court. The Derouin decision also state's that the municipality was aware of the mistake three weeks prior to awarding the contract. The School District was, of course, aware almost immediately of the alleged error made by Iversen.
The law of this State makes it very clear that under the circumstances of this case, it would be unconscionable to require Iversen to perform at the mistaken bid price. In fact, the defendant, School District, although not conceding this point on the record, seeks as alternative relief, reformation rather than rescission of the contract, since the best interest of the School District and the taxpayers of the district would be better served by that result.
Although there is little New York law dealing with the question of equitable reformation of a bid contract, there is considerable law in our Federal court system and other jurisdictions which supports reformation as an appropriate remedy.
In the case of Dick Corp. v Associated Elec. Coop. (475 F Supp 15 [1979]), the United States District Court for the *39 Western District of Missouri held in a situation similar to that now before this court that reformation was the appropriate equitable relief. The court in the Dick Corp. case listed as the prerequisites for equitable relief the following criteria: (1) that a mistake be of such consequence that enforcement would be unconscionable; (2) that the mistake relate to the substance of the consideration (a material mistake); (3) that the mistake have occurred regardless of the exercise of ordinary care; and (4) that the other party can be placed in status quo.
The testimony in this matter provides overwhelming evidence demonstrating that the four criteria set forth above have been met. Since the School District knew almost immediately of the mistaken bid, one that was clearly recognized in New York State as requiring equitable relief, there can be no question but that it would be unconscionable to require the plaintiff to perform under the mistaken bid. It is obvious that the mistake was of such nature as to be classified as material, relating to the substance of the consideration. It is also clear from the testimony of the witnesses presented by the plaintiff (none were presented by the defendants on this issue) that the plaintiff exercised ordinary care in the procedure followed in submitting its bid and that the mistake occurred notwithstanding this care. There is really no dispute presented by either defendant that this was a legitimate mistake and all agree that there was no improper conduct, fraud or collusion on the part of the plaintiff. This was clearly a good-faith error inadvertently made by the plaintiff. The final criteria to be considered is that of placing the other party in status quo. Here, reformation of the contract would not only place the School District in status quo but would also in no way prejudice the intervening defendant, Christa, or any of the other bidders in that Iversen’s reformed bid would still be the lowest bid. The reformed bid, which was clearly the intended bid, places all parties to this proceeding in status quo.
This court finds as further authority for reformation under the circumstances of this case the case of Bromley Contr. Co. v United States (596 F2d 448 [1979]). This United States Court of Claims decision permits reformation in an action involving a bid by a contractor to perform building reconstruction at West Point. The court points out that the remedy of reformation has been extended beyond the traditional area of mutual mistake to include situations where a party has known or should have known of the bidding error. Here it is undisputed that the School District knew of the mistaken bid submitted *40 by Iversen before the awarding of the contract to Iversen at the erroneous bid amount.
Further authority for permitting equitable relief in the nature of reformation or modification is set forth in Moffett, Hodgkins & Clarke Co. v Rochester (178 US 373) and other cases cited in McQuillin, Municipal Corporations (vol 10, § 29.82 [1988 Cum Supp]). This treatise discusses the issue of mistake as affecting the obligation of the bidder. It indicates that when a good-faith mistake is made in a bid and notification is promptly given to the municipality of the error, the municipality may not take advantage of the initial inaccurate bid. As stated (op. cit., at 55-56): "It can hardly be a substantial impairment of the system of public bidding developed by experience and usual in public contracts to grant such relief where a bona fide mistake is proven and was known to the municipality before acceptance or any loss to it. * * * Further, the second lowest bidder may have no standing to challenge the contract where the low bid remains low even with the addition of cost resulting from the low bidders unilateral good faith mistake in initially omitting that cost. In such a case, there is no standing to challenge the award of the contract as nothing is shown establishing fraud, corruption or acts undermining the objective and integrity of the competitive bidding process.”
This line of reasoning is similar to that set forth in 16 NY Jur 2d, Cancellation and Reformation of Instruments, § 49. This section discusses the propriety of reformation where there is a mistake by one party and fraud or inequitable conduct by the other. While the court does not believe that there was any intentional misconduct on the part of the School District in awarding the contract based on the original bid, the inequitable result which would arise from that contract, coupled with the inadvertent mistake made by Iversen, would seem to serve as grounds for reformation in this instance.
One other consideration in permitting reformation of the contract bid in the instant matter is the benefit to the School District and the taxpayers that will result. It seems clear enough that the competitive bidding laws are to protect the public (taxpayers) from improprieties in the bidding process and to obtain for the public the best bargain available for its tax dollar. As stated in the case of Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth. (111 AD2d 230, 235 [Niehoff, J., dissenting]): "[w]e also agree with the majority *41 that the bidding process is designed to eliminate favoritism and similar evils. '[T]he obvious purpose of [the competitive bidding] statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption. They "are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest” ’
Since the evidence in this case leads undeniably to the conclusion that a bona fide honest mistake was made by Iversen without any fraud, collusion, corruption or impropriety on the part of any of the parties, and that the public interest would best be served by correction of that mistake, this court is of the opinion that the Iversen bid and contract awarded by the School District should be reformed to reflect what was clearly the intention of the plaintiff.
Judgment is, therefore, awarded to the plaintiff in accordance with the above decision. The counterclaim of the School District and cross claim of Christa are dismissed.