■ JEFFREY W. SILBERMANN, Respondent, v CITIBANK, N.A., et al., Appellants. [599 NYS2d 588] —Order, Supreme Court, New York County (Francis N. Pecora, J.), which, *inter alia*, denied defendants' motion for partial summary judgment on their six counterclaims, unanimously affirmed, with costs.

Defendants Citibank, N.A. and Citicorp Credit Services (hereafter collectively, "Citibank") issued three credit cards to plaintiff: a Preferred Visa (credit line $5,000); a Preferred MasterCard (credit line $6,500); and a MasterCard (credit line $1,500). The cardholder agreements provided that the cardholder would be in default if he or she did not pay an installment on time or exceeded the credit line without permission, and that upon default Citibank could demand immediate payment of the full balance.

The dispute between the parties had its genesis on January 31, 1989 when plaintiff used his Visa card to make a $764.83

purchase at Summit Lincoln Mercury in New Jersey, a purchase that put plaintiff $230.83 beyond his credit limit on that card. The credit card receipt has an approval code number entered on it, but Citibank's computer readout indicates that approval of the transaction was denied.

On the next day, February 1, plaintiff attempted to use his Visa card to make an $80 purchase at a clothing store, but Citibank sent a message through its terminal to seize plaintiff's card, which was accomplished by the store's security personnel, allegedly causing plaintiff "extreme embarrassment." On February 7, 1989, Citibank sent a Visa billing statement to plaintiff including the disputed Summit charge, and warning him to pay the minimum amount due on his account before using his card again. Apparently the computer that sent this statement had not communicated with the computer that had ordered plaintiff's card confiscated a week earlier.

On March 7, 1989 Summit Lincoln Mercury wrote to plaintiff advising that Citibank had issued a "return" on the $764.83 charge even though, according to Summit, the charge had been approved on January 31. The letter went on to demand from plaintiff a check in that amount and, if payment was not forthcoming as demanded, threatened to commence litigation against him and report him to credit bureaus. Plaintiff paid Summit immediately, and complained to Citibank. On March 14, 1989 Charles D. Lemme, Citibank's Vice President and General Counsel, responded to plaintiff: "Please be advised that our records reflect that the $764.83 charge from Summit Lincoln Mercury was transmitted to Citibank and item was not reversed back to the merchant's bank for an 'over the floor limit' transaction and was added to the account." Thus plaintiff was being told that Summit was not entitled to the $764.83 check plaintiff had just sent, as there had been no reversal of the charge, and that plaintiff was still obligated to pay that amount to Citibank. Plaintiff was also chided for allowing his account to go over the limit, and was told that the seizure of his card was for his own protection as well as that of Citibank. Five months later, on August 24, 1989, Mr. Lemme was still insisting that as of March 14, the $764.83 charge had not been reversed, but Citibank's own records establish that the charge reversal had been posted on March 9, and it had obviously been communicated to Summit at least two days earlier. Some time thereafter, plaintiff's Preferred MasterCard and MasterCard accounts were closed.

Plaintiff consulted a lawyer, Barry Serper, who attempted to

resolve the dispute. On October 3, 1989, Mr. Serper and Ms. Celeste McClosky, a credit manager for Citibank, reached an agreement memorialized in a letter written by Ms. McClosky on that date to Mr. Serper. The agreement set forth the account balances for the three credit cards and the amounts needed to bring the accounts up to date ($250, $375, and $1,141). The agreement continued:

"Upon receipt of above mentioned certified payments, your accounts will be reopened, and your credit bureau will be updated.

"To avoid the Preferred Visa from further delinquency, I would be willing to send Federal Express at Citicorp's expense on Wednesday, October 4, 1989 to pick up your payment.

"Your immediate response will be appreciated."

Pursuant to this agreement, plaintiff obtained certified checks in the amounts requested by Ms. McClosky, and on October 6, 1989 forwarded them to her by Federal Express to resolve the matter and reinstate the cards. Citibank refused to accept the checks on the ground (asserted by Citibank in an affidavit submitted in support of its motion for partial summary judgment) that the checks had to be sent by "Thursday, October 5th in order to insure delivery to Citibank by the deadline of October 6, 1989. * * * Ms. McClosky [allegedly] explained that payment sent later than Thursday, October 5th, would be received too late to prevent the accounts from being charged off on Citibank's books."

Plaintiff thereafter commenced a lawsuit against Citibank alleging, *inter alia,* defamation and breach of contract. Citibank counterclaimed for the full amounts owed under the three credit card agreements and moved for partial summary judgment on its counterclaims. The IAS Court correctly denied that motion, finding disputed factual issues. Aside from the factual questions concerning the propriety of the initial seizure and cancellation of plaintiff's Preferred Visa account, there is clearly a factual question as to whether plaintiff, or Citibank, violated the parties' agreement as set forth in the October 3, 1989 executory accord (General Obligations Law § 15-501).

"If an offer specifies the time of its duration, it must be accepted within that time; however, where no time is specified for the offer's duration, it must be accepted within a reasonable time. What is a reasonable time is a question of fact, dependent on the nature of the contract." (21 NY Jur 2d, Contracts, § 52, at 468-469; *see, State of New York v Atlantic*

*Audio-Visual Corp.,* 118 AD2d 998, 1001.) The language of the executory accord is not nearly so definite in its strict insistence on delivery of the certified checks on or before October 6, 1989, as is urged by Citibank. Thus a jury might find that plaintiff's sending the certified checks on October 6, 1989 was reasonable compliance with his obligation under the executory accord, with the result that he would be entitled to reinstatement of his credit cards upon tender of the specified payments *(American Bank & Trust Co. v Koplik,* 87 AD2d 351, 354-355). Concur—Carro, J. P., Kupferman, Kassal and Rubin, JJ.