STATE ex rel. MINNESOTA MINING
AND MANUFACTURING COMPANY,
a corporation, Appellant

v.

Stephen C. BRADFORD, as the Commis-
sioner of Administration for the State
of Missouri, and his agent, Raymond L.
Moore, as the Director of the Division of
Purchasing, Respondents.

No. WD 30998.

Missouri Court of Appeals,
Western District.

July 8, 1980.

Raymond E. Johnson, St. Paul, Minn.,
Michael P. Riley and Cullen Coil, Jefferson
City, for appellant; Carson, Monaco, Coil,
Riley & McMillin, P. C., Jefferson City, of
counsel.

John Ashcroft, Atty. Gen., Terry C. Allen, Asst. Atty. Gen., Jefferson City, for respondents.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and KENNEDY, JJ.

PRITCHARD, Judge.

Relator-appellant (3M) was unsuccessful in its attempt to mandamus respondents to require them to rescind a contract to Potter and Whitteker for the reflectorization of automobile license plates, and to award a contract to relator to 3M in accordance with its bid therefor by the reflectorized sheeting method.

The relevant facts stipulated, with which respondents do not agree as completely describing all of the facts in the case but which are adopted by them as being accurate, are these: § 301.130.3, RSMo 1969, and the same section and subsection as amended, Laws 1977, p. 495, § A, provide, "The background of all license plates, or the letters and numerals thereof, shall be coated with a material which will reflect the lights of other vehicles. The nature and specifications of this material shall be determined after a public hearing by the director of revenue, director of prison industries, and superintendent of the state highway patrol, and shall meet the standards established by the state highway department." § 301.-130.9 (the 1977 amendment) provides, "The director of revenue may prescribe rules and regulations for the effective administration of this section." [It does not appear from the record that the director of revenue or acting director of revenue ever prescribed any rules or regulations for the effective administration of the section.] § 301.290.1 provides that the division of prison industries shall purchase, erect and maintain all machinery and equipment necessary for the manufacture of license plates and tabs issued by the director of revenue (etc.), who shall procure the plates and tabs from the division of prison industries unless an emergency arises, and the division shall furnish plates and tabs at such a price as will not exceed the price at which they may be obtained on the open market, but in no event shall the price be less than the cost of manufacture, including labor and materials.

On January 26, 1978, pursuant to § 301.-130.3, the then acting director of revenue, the director of prison industries and the superintendent of the state highway patrol held a meeting and fixed the time for the public hearing required by the statute for 9:00 a. m., on January 30, 1978, and released an announcement of the meeting to all Missouri newspapers and by letters inviting eleven companies, including 3M, who ostensibly would have an interest in furnishing materials for the license plates. On the set hearing date, the following persons were present: John Haralson, assistant director of the motor vehicle licensing division, department of revenue, representing by request and direction the acting director; Colonel Al Lubker, superintendent of the state highway patrol; and Raymond Hogg, director of prison industries. These persons and Michael Morris, of the Senate appropriations committee, Edward Haynes, of the department of corrections, were present at a called meeting on February 6, 1978, to review the testimony presented at the January 30, 1978 meeting. All of these persons and Larry Schepker met on February 7, 1978.

The "301" committee reported its action, which has never been rescinded or changed thus: "Following considerable discussion and reexamination of previous testimony, the committee unanimously agreed to recommend the usage of galvanized steel with appropriate coating for the manufacture of multi-year plates and by majority vote recommended such plates be reflectorized by the reflective sheeting method." 3M made the only bid upon the specifications of the 301 committee (i. e., the reflective sheeting method), but the only contracts awarded were one to Potter and one to Whitteker, each of which was a bid for beads-on-paint. Apparently these awards were made upon an amended request for bid proposal resulting from these further facts:

On June 1, 1978, a request for proposal and award was mailed to 3M, and it, through its employee and agent, James

Keaton, and its consultant, Harry Gallagher, appeared and participated in a pre-bid conference on June 9, 1978. Apparently, these proceedings resulted in an amended proposal (B–38414 not before this court) and in response thereto 3M bid, which included two processes, reflective sheeting and reflective liquid, the latter using beads which are similar to the beads used in beads-on-paint, but the two processes are different.

The second regular session of the General Assembly did not appropriate sufficient funds to pay 3M for any obligation which would arise in the event that a contract arose by reason of its bid for reflective sheeting.

There was a "purchasing and evaluation committee" formed and chaired by respondent Moore as director of the division of purchasing, with persons named as members by the heads of the department of corrections, the department of revenue, and the state highway department, a committee of four. It was a committee established by interoffice procedure, not one authorized by statute.

Further facts are derived from the testimony at trial. Dr. Donald Raymond Theissen, of the 3M company, described the differences in the several platings for license plates. There is a plain painted plate used in a few states. There is a diffuse reflection plate upon which a microscopically rough surface is struck by a light beam and the light is scattered in all directions. The light of a mirror reflection is reflected off almost in total at an equal and opposite angle—in a new direction. The retro-reflective process is one in which the incoming light beam is designed to return the light beam along the path of the incoming light. "The net effect of that is even at significantly wide angles from perpendicular to that surface, the light beam will strike the surface and will return in a cone around the incoming beam back towards the source. * * * The process, whether it's through the beads-on-paint approach or through the reflective-sheeting approach results from the fact that a very tiny glass bead acts as focusing element to the light." Dr. Theissen described the processes: In "beads-on-paint" the beads are dropped on wet paint, and thus are exposed directly to air and to the environment. When anything gets on the front surface of the bead, water or something else, the light is not fully reflected. In the "reflective-liquid" approach, there is a hemispherical coating of vapor deposit on each glass bead which is then dispersed in a paint which is applied to the embossed numerals of the license plate.

In the "reflective-sheeting" approach, there is a protective top plastic layer which is designed to keep the bead from the elements, and the beads are embedded in that layer. Contaminates on the surface do not affect the direction of the light. Dr. Theissen was aware that 3M's bid was for both the reflective-sheeting and reflective-liquid processes.

Respondent Stephen C. Bradford is Commissioner of Administration and as such, under the Reorganization Act, he took over the duties of the former State Purchasing Agent so that respondent Raymond L. Moore, Director of Purchasing, is one of his employees. Bradford accepted the bids from Whitteker and Potter because in his judgment they were the lowest and were the best process. He was aware that the (301) committee had made a recommendation other than beads-on-paint reflective process, which is what Whitteker and Potter's bids covered. Bradford's award of the contract was based on an evaluation report of the Director of Purchasing, who was the chairman of the "purchasing and evaluation committee" which was established by interoffice procedure, all of which resulted in the preparation of a new proposal for reflective license plates, new and further bids, and the award of the contract to Whitteker and Potter.

In its memorandum, the trial court concluded that mandamus would not lie for the stated reason that nothing in 3M's petition suggests that the present action is intended to protect a public interest, and that 3M seeks to enforce a private right, "but does not and cannot show special pecuniary

harm." Cited and relied upon by the trial court is *State ex rel. Johnson, State Purchasing Agent v. Sevier*, 339 Mo. 483, 98 S.W.2d 677 (banc 1936). That case was brought to prohibit the trial court from proceeding further with a mandamus suit in which a contract for x-ray equipment was ordered to be awarded to the lowest of three bidders. The purchasing agent had awarded the contract to the next highest bidder. The provisional rule in prohibition against the trial court was made absolute. At page 678[3–6], the court noted the rule of law that where a public duty is sought to be enforced in which the public generally is interested by private citizens on behalf of the public as well as on their own mandamus will lie, " 'because the people are regarded as the real, moving party.' " The court went on, page 679, " 'But a different rule applies where a private citizen seeks to enforce the performance of an official duty to protect a private right. * * * In cases where private rights are sought to be enforced it must be made to appear by the petition or alternative writ that the petitioner has been injuriously affected by respondent's default or breach of duty, or that he will be injuriously affected if that duty is not performed. 26 Cyc. 443.' " And quoting from 38 C.J., p. 842, § 548, further: " ' * * * Nevertheless, if an individual sues, not in behalf of the public, but solely in his own behalf, he must have a special pecuniary interest in the matter, *and a clear legal right to the relief asked, else the writ will not issue.' "* (Italics added.) See also 55 C.J.S. Mandamus, § 47, p. 79, for the same quote.

■ 3M rather clearly has a pecuniary interest in the matter of its bid for the reflectorized license plate process. Respondents' brief notes, "We can appreciate 3M's vigor in what might be at stake to have a three million dollar contract awarded to it wherein there has not been sufficient funds appropriated for the award." 3M says that because it was the only bidder for the reflective-sheeting process, it could not be an unsuccessful bidder. But what happened is that after the pre-bid conference, new proposals were sent out to prospective bidders, and 3M, acceding, submitted a new bid not only for the reflective-sheeting method but also for the reflective-liquid process. The latter process is obviously very similar to the beads-on-paint process as both are described by Dr. Theissen. Whitteker and Potter were the low bidders for the beads-on-paint process. The question reduces to whether 3M has a clear legal right to have a writ of mandamus issued to respondents commanding them to rescind the contract as awarded and to award a contract to it. The requested writ was clearly for the sole benefit of 3M, a private right, and not also for the public benefit generally. The *Sevier* case, supra, although involving three bidders, says at page 679[7] that petitioners did not and could not show a legal right to the relief asked, "for the reason that the rejection of their bid did not give them any private right which they could enforce by mandamus or otherwise. This is so for two reasons: (1) Because the 'advertisement was not an offer of a contract, but an offer to receive proposals for a contract,' and (2) because the statute requiring that contracts be let to the lowest and best bidder was designed for the benefit of the public and not the bidders." Thus, 3M could not have created any contractual right by its submission of its bid for reflective-sheeting of the plates in response to the 301 committee's "offer to receive proposals for a contract."

■ § 34.040, RSMo 1978, prescribes the duties of the state purchasing agent, whose duties have been taken over by the Director of the Office of Administration, respondents Bradford and his employee, Moore. The statute first says that "All purchases shall be based on competitive bids." 3M argues that this refers only to bids for supplies in the usual and normal course of business and not to bids for purchases. The statute uses interchangeably the words "purchases" and "supplies", for example, "He shall also, on all *purchases* estimated to exceed two thousand dollars, solicit bids by mail from prospective *suppliers.* All bids for *supplies* shall be mailed or delivered to the office of the purchasing agent * *." (Italics added.) The words used are merely

a distinction without a difference. 3M goes on, however, in argument that since the nature and specifications of the reflective license plates are to be determined by a special statutory committee (301), that act replaces respondents' usual duties under § 34.050 to determine specifications, and their duties become *purely ministerial*, with no lee-way given them, and a rejection of a bid or bids for the materials determined by the 301 committee is not contemplated by § 301.130.3.

There are further facts bearing on a determination of 3M's latter contention. First, the 301 committee merely made a *recommendation* (a word emphasized by the trial court in its memorandum, but without elucidation) that the reflective-sheeting method be used. There was no evidence that the state highway department had established any standards for the materials. Then, in its report of February 8, 1978, the 301 committee stated, "The Director of Revenue, working in conjunction with Prison Industries and the State Highway Department, will prepare bid specifications and performance requirements." Although the 301 committee "recommended" the reflective-sheeting method, this report contemplates that there would be continued development of specifications. The evidence shows that subsequent meetings were attended by members of the 301 committee, and by a representative of the State Highway Department, which resulted in the new bid proposals. What is apparent is that the 301 committee never did perform its statutorily prescribed duties finally as to a determination of the nature and specifications of the reflective license coating materials. However that may be, there was never any action taken to compel that determination by the 301 committee, or to curtail the actions of any so-called interoffice committee, as 3M calls it.

Respondents still had the authority to reject any and all bids for the materials under § 34.040. The license coating statute, 301.130.3 does not grant any authority to the committee formed thereunder to award contracts, and nothing therein, either expressly or by implication, revokes or repeals the authority of respondents to award the contract to the lowest and best bidder, or to reject any and all bids. Under the *Sevier* case, supra, 3M has no standing to seek its asserted private right, and mandamus does not lie under these facts. See *State ex rel. Patterson v. Tucker*, 519 S.W.2d 22, 24[5] (Mo.App.1975), and cases cited. It is unnecessary to consider whether the failure of the General Assembly to appropriate sufficient funds to pay 3M for its contended contract defeats it, but see *State ex rel. Armontrout v. Smith*, 353 Mo. 486, 182 S.W.2d 571, 575 (banc 1944), holding that "The legislature has the ability to avoid payment of obligations of the state by a failure or refusal to make the necessary appropriation * * *."

The trial court did not erroneously declare or apply the law, and there exists no firm belief that the judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment is affirmed.

All concur.