**STATE of Missouri, ex rel. Dean PAGE, Relator–Appellant,**

**and**

**Killian Construction Company and Dean Page, Plaintiffs–Appellants,**

v.

**REORGANIZED SCHOOL DISTRICT R–VI OF CHRISTIAN COUNTY, Missouri, et al., Defendants–Respondents.**

**No. 15501.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 4, 1989.

Motion for Rehearing or Transfer Denied and Overruled Feb. 1, 1989.

Application to Transfer Denied March 14, 1989.

Donald W. Jones, Hulston, Jones & Sullivan, Springfield, for plaintiffs-appellants.

John W. Sims, Haymes, Sims & Thompson, Marshfield, Lincoln J. Knauer, Farrington & Curtis, Springfield, James L. Eiffert, Ozark, Clyde R. Allemann, Dickey, Allemann, Chaney & McCurry, Springfield, for defendants-respondents.

MAUS, Judge.

In the two actions which are the subject of this appeal, an unsuccessful low bidder and a taxpayer contend that a school board acted illegally in not awarding a construction contract to the low bidder. They seek relief by mandamus, injunction and declaratory judgment. The circuit court found the action of the school board was not illegal and denied relief. The unsuccessful low bidder and the taxpayer appeal.

The transcript of the evidence in this court tried case is voluminous. The thrust of much of that evidence was to establish the appellant low bidder (Killian Construction Company hereafter called Killian) was a "responsible bidder" within the meaning of § 177.086. It is conceded Killian is so qualified. Further, much of the testimony was elicited by argumentative questions predicated upon an erroneous construction of § 177.086. This concession and the established construction of § 177.086 cause it to be unnecessary to even summarize much of the evidence. The following is an outline of the basic controlling facts.

Reorganized School District R–VI of Christian County advertised for bids for the construction of a new elementary school. The plans and specifications for that construction called for completion by December 20, 1988. Six bids were received. The bid of Killian was for $2,124,-000. The bid of Crawford Construction Company, a partnership, (hereafter referred to as Crawford) was for $2,148,000. The other four bids ranged from $2,172,000 to $2,440,000.

The bids were opened on August 20, 1987. Following the bid opening, representatives of the two low bidders, Killian and Crawford, were asked to tell the board a little about their respective companies. They did so. They were specifically asked about their experience in school construction. The representative of Killian said the company had done a renovation at Springfield Central High School. Don Crawford related the names of six or seven districts for which Crawford had constructed school buildings. The president of the board then appointed a committee of two board members, architect Ball, and the superintendent of schools to interview the two low bidders privately and separately.

The representative of Killian was first interviewed. He was asked questions concerning Killian's bid. The questions included inquiries concerning subcontractors and materials. He was also asked if Killian was comfortable with the completion date. Killian's representative replied that the company could complete the project two months earlier. The representative of Crawford was asked similar questions. He responded that Crawford could complete the project by September 1, 1988. He was then asked if the company would sign a contract that provided penalties for late performance for completion by September 1, 1988. He responded that Crawford would sign such a contract. The commit-

tee then discussed the interviews. The architect recommended an award to Crawford.

The board then reconvened in open meeting. In response to a question by the president of the board, the superintendent of schools recommended the award of the contract to Crawford. By a unanimous vote the board awarded the contract to Crawford.

Three board members testified at trial. Excerpts from the depositions of the three other board members were received in evidence. Four board members were asked the reasons why they awarded the contract to Crawford. Their answers included the following. The greater experience in school construction of Crawford. The recommendation of the superintendent of schools. The earlier completion date. The superior presentation made by the representative of Crawford and his ability to answer questions of the board. One board member testified that Killian's representative seemed indifferent. Two members of the board were unaware of the early completion date of September 1, 1988.

Don Crawford and the architect had been on a fishing trip together. None of the board members or the superintendent of schools had any acquaintance or association with Crawford. There was evidence it was not unusual for the contracting authority to conduct post bidding interviews with two or more low bidders. On one bid letting for the construction of a church where Ball was architect, Killian was awarded the contract as second low bidder. Page testified that except for not letting the contract to Killian, he had no knowledge the board was corrupt, capricious or fraudulent.

Subsequent to the bid letting, Killian offered to complete the project by September 1, 1988. This offer was refused. That refusal was promptly followed by the institution of the actions which are the subject of this appeal. The first action is in mandamus. The relator in that action is Dean Page. Page is an employee of Killian. It was probable he would have been job superintendent for the Ozark School. He resides in and is a taxpayer of the school district. His legal fees are being paid by the Springfield Contractors Association. In the mandamus action, the relator prays that the contract with Crawford be cancelled and the board directed to award the contract to Killian.

Killian and Page are plaintiffs in the second action which is in three counts. By count I Killian and Page pray for various forms of injunctive relief. By count II they seek a declaration that the award of the contract to Crawford was illegal and that the board must award the contract to Killian. By count III Killian seeks damages for malicious interference with contract against Crawford and project architect Ball. Count III was severed. As a result of commendable cooperation by the attorneys involved, the mandamus action and counts I and II were consolidated and tried on September 24 and 25, 1987. Also with commendable dispatch, the circuit court promptly rendered its decision.

In rendering that decision, the circuit court dictated into the record findings of fact and conclusions of law. Its fundamental conclusions were "that the school board can reject any and all bids, that they do have discretion with these bids. The second conclusion of law would be that the rejection of a bid or the rejection of this bid in this case was not arbitrary of [sic] capricious or unlawful." It repeated the conclusion that the rejection of the bid of Killian "was not unreasonable or for an improper motive and was not an abuse of their discretion." The circuit court then entered judgment denying the appellants relief in mandamus and upon counts I and II of the petition in the second action. That judgment was declared to be final for the purpose of appeal.

The appellants state four points on appeal. Two of those points rest upon their basic contention the Board was required to award the contract to the low bidder unless that bidder was not a "responsible bidder." They acknowledge cases denying relief to a low bidder, such as *Metcalf & Eddy Services, Inc. v. City of St. Charles*, 701 S.W.2d 497 (Mo.App.1985). However, they seek to

avoid the authority of such cases because the relator and one of the plaintiffs in these actions is a taxpayer. To support this proposition, they cite dictum concerning a taxpayer's action in *La Mar Construction Co. v. Holt County, R–II School District,* 542 S.W.2d 568 (Mo.App.1976). See *Pace Construction v. Mo. Highway & Transportation Com'n,* 759 S.W.2d 272 (Mo.App.1988). They support that dictum by the following statement from *State ex rel. Johnson v. Sevier,* 339 Mo. 483, 98 S.W.2d 677 (banc 1936):

> If the contract with the General Electric X–Ray Corporation was *not entered into in good faith,* the law affords taxpayers a complete remedy for its cancellation, but private individuals, as unsuccessful bidders, cannot maintain a suit in their own behalf to cancel the award as made and compel the awarding of the contractor to them.

*Id.* 98 S.W.2d at 681 (emphasis added). That statement does not support the dictum relied upon by the appellants. In fact, it declares that a taxpayer can attack such a contract only if it is not entered into in good faith.

Also they cite cases from other jurisdictions such as *Owen of Georgia, Inc. v. Shelby County,* 648 F.2d 1084 (6th Cir. 1981); *Fetters v. Mayor & Council of Wilmington,* 31 Del.Ch. 338, 73 A.2d 644 (1950); *Gerard Construction Co., Inc. v. City of Manchester,* 120 N.H. 391, 415 A.2d 1137 (1980); *R. & B. Builders, Inc. v. School District of Philadelphia,* 415 Pa. 50, 202 A.2d 82 (1964). Those cases do not establish their contention. They do not construe and apply a statute that grants the public body the right to reject any and all bids. The significance of this proviso in § 177.086 is emphasized in cases such as *Owen of Georgia* and *Fetters.* In those cases that proviso was contained only in the advertisement for bids. In commenting on that proviso, the courts have observed: "Whatever effect the *nonstatutory quoted language* may have, it is at once apparent that it cannot be employed so as to *abrogate the provision of the statute requiring the work to be let to the 'lowest and best bidder.'* " *Fetters,* 73 A.2d at 647

(emphasis added). "The Act, not the bid advertisement, constitutes the law controlling the award of the contract." *Owen of Georgia,* at 1091 n. 8.

The appellants present strong and persuasive arguments why, as a matter of policy, a contract should be awarded to the lowest qualified bidder to maintain the integrity of competitive bidding. To support those arguments, they cite cases such as *Rossetti Contracting Company, Inc. v. Brennan,* 508 F.2d 1039 (7th Cir.1974); *Conduit & Foundation Corp. v. Metropolitan Transportation Authority,* 111 A.D. 2d 230, 489 N.Y.S.2d 265 (2 Dept.1985); *Thelander v. City of Cleveland,* 3 Ohio App.3d 86, 444 N.E.2d 414 (1981). In general, this court agrees with that policy. However, the authority of the school board is not to be measured by policy but is defined by statute. The relevant part of the applicable statute reads as follows: "[A]ll contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the said school district shall have *the right to reject any and all bids.*" § 177.086.2 (emphasis added).

■ The construction of that statute was established long ago by a controlling decision of the Supreme Court of this state. In that case *taxpayers* sought to compel a county treasurer to accept the bid of the bank offering to pay the highest interest upon the deposit of the county's money. The relevant portion of the applicable statute reads: " 'It shall be the duty of the county court ... to select as the depositary ... the banking corporation, ... offering to pay to said county the largest rate of interest ...; provided, that the court shall have the right to reject any and all bids.' " *Reagan v. Iron County Court,* 226 Mo. 79, 125 S.W. 1140, 1142 (1910). The court held this statute vested the county court with discretion to reject the bid for the largest rate of interest and to accept the bid for the next largest rate. In so holding the court said:

> The very fact that the proviso allows the rejection of all bids demonstrates that there was intended to be left a discretion

in the county court. But, further, this proviso allows the county court, not only to reject all bids, but goes further and allows it to reject 'any and all bids.' Such provision but emphasizes the fact that the Legislature was lodging a discretion with the county court. Grant it that the provision in the body of the act might be construed to mean that there was an imperative duty upon the part of the county court to designate the highest bidder as the county depositary, yet the very purpose of a proviso, under the law, is to modify the broad and general terms of the act to which it is attached....

Construing this statute as a whole, we have no doubt that discretionary power is lodged in the county court in the matter of selecting a county depositary.

*Id.,* 125 S.W. at 1142. That construction of the statute was affirmed in *Liquidation of Peoples Bank of Butler,* 344 Mo. 611, 127 S.W.2d 669 (banc 1939).

In *State ex rel. Johnson v. Sevier,* supra, a low bidder contended the state purchasing agent violated the applicable statute by awarding the contract to another bidder. That statute provided the contract should be let to the lowest and best bidder, but reserved the right to reject any or all bids. § 13821a, R.S.Mo.1939. In rejecting the low bidder's contention, the court quoted from *Anderson v. Board, Etc., of Public Schools,* 122 Mo. 61, 27 S.W. 610 (1894) which construed an advertisement for bids for the construction of a school building.

The right to reject the bids was unconditional. Defendant was entitled to exercise that right for any cause it might deem satisfactory, or even without any assignable cause. Whatever its rules or practice as to the acceptance of bids may have been, plaintiffs' rights cannot be justly held to be greater than those conferred by the published advertisement on which their bid was made. That advertisement was not an offer of a contract, but an offer to receive proposals for a contract. *Spencer v. Harding* (1870), 5 L.R.C.P. 561.

*Anderson,* 27 S.W. at 612. The court then declared: "While the Anderson Case was

not a mandamus action, the rule of law it pronounces is applicable to the controlling question in the instant case." *State ex rel. Johnson v. Sevier,* supra, at 680.

It is appropriate to note that *Conduit & Foundation v. Metro–Transportation Authority,* 111 A.D.2d 230, 489 N.Y.S.2d 265 (2 Dept.1985), cited to the court, has been reversed. *Conduit & Foundation v. Metro–Transportation Authority,* 66 N.Y.2d 144, 485 N.E.2d 1005, 495 N.Y.S.2d 340 (1985). In reversing that decision the court said: "Although the power to reject any or all bids may not be exercised arbitrarily or for the purpose of thwarting the public benefit intended to be served by the competitive process ..., the discretionary decision ought not to be disturbed by the courts unless irrational, dishonest or otherwise unlawful." *Id.,* 485 N.E.2d at 1008, 495 N.Y.S.2d at 343 (citations omitted).

The construction of § 177.086 is established by *Liquidation of Peoples Bank of Butler, supra; Reagan v. Iron County Court, supra;* and *State ex rel. Johnson v. Sevier,* supra. That construction is the basis for and implicit in decisions holding that a low bidder has no standing under the statute to challenge the award of a contract to another bidder. *State ex rel. Johnson v. Sevier,* supra. This construction has been consistently followed in this state in cases applying § 177.086 and similar statutes. "This court recognizes 'the principle of law that where a public body reserves the right to reject any and all bids that are submitted to it they are empowered to do just that and by rejecting a bid they create no vested interest or property right in the rejected bidder.' *La Mar,* 542 S.W.2d at 570." *Metcalf & Eddy Services v. City of St. Charles,* supra, at 499. "The city is within its rights to determine to which bidder, if any, it will award the contract. This language does not create any property rights in the unsuccessful bidders." *M.C. Thomas Construction Co. v. City of St. Louis, Mo.,* 679 F.Supp. 908, 910 (E.D.Mo. 1988). Also see *Missouri Service Co. v. City of Stanberry,* 341 Mo. 500, 108 S.W.2d 25 (1937); *State ex rel. Doniphan State Bank v. Harris,* 176 S.W. 9 (Mo.

1915); *Anderson v. Board, Etc., of Public Schools, supra; State ex rel. State Journal Co. v. McGrath,* 91 Mo. 386, 3 S.W. 846 (1886); *State ex rel. Minnesota Mining and Manufacturing Co. v. Bradford,* 602 S.W.2d 37 (Mo.App.1980); *Gast v. Langston,* 15 S.W.2d 353 (Mo.App.1929).

The conclusions of law of the circuit court were correct. There was evidence to support its finding the award of the contract to Crawford was not arbitrary or capricious or from an improper motive and was not an abuse of the board's discretion. The appellants' basic contention is unsound. The points based thereon are denied.

■ By their third point the appellants argue that they should have been granted relief in some form because the Board denied Killian a hearing upon its objection to the award of the contract to Crawford. They contend this was a denial of due process and cite *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). It is sufficient to observe that by submitting a bid under § 177.086, Killian acquired no property right. *La Mar Construction Co. v. Holt County, R–II School District,* supra. Due process did not require the Board to hold a post-award hearing to establish that it reasonably exercised its discretion. *Kennedy v. City of St. Louis,* 749 S.W.2d 427 (Mo. App.1988).

■ By their remaining argument, the appellants contend they are entitled to relief under the Sunshine Law. §§ 610.010 to 610.030. They argue this law was violated by the closed meeting of the committee and two low bidders. They urge the court to void the award of the contract to Crawford. Assuming the meeting of the committee causes the award of the contract to Crawford to be "action taken in violation of" the Sunshine Law, the annulment of that contract is not mandatory. Section 610.027.4 in part provides:

[A] court shall void any action taken in violation of sections 610.010 to 610.026, if the court finds under the facts of the particular case that the public interest in the enforcement of the policy of sections 610.010 to 610.026 outweighs the public interest in sustaining the validity of the action taken in the closed meeting, record, or vote.

The circuit court did find this action of the Board to be an innocent, minor violation of the Sunshine Law. However, it also found "the public interest in sustaining the action of interviewing these bidders and discussing the bids outweighs the public interest in enforcement of the sunshine law for this very minor, technical violation." That finding is supported by the evidence. It does not erroneously declare or apply the law. *Hudson v. School District of Kansas City,* 578 S.W.2d 301 (Mo.App.1979). Therefore, it is affirmed. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The appellant's final argument is refuted. The judgment of the circuit court is affirmed.

HOGAN, J., concurs.

FLANIGAN, P.J., concurs and files concurring opinion.

PREWITT, J., recused.

FLANIGAN, Presiding Justice, concurring.

I concur fully with the principal opinion, but I do so reluctantly and only because this court is bound by decisions of the Supreme Court of Missouri. The principal opinion contains a quotation from *Reagan v. Iron County Court,* 226 Mo. 79, 125 S.W. 1140, 1142 (1910). Although that language compels me to concur, I do not agree with its rationale.

Section 177.086.2 reads:

"No bids shall be entertained by the school district which are not made in accordance with the specifications furnished by them *and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the said school district shall have the right to reject any and all bids.*" (Emphasis added.)

The effect of the holding in *Reagan,* which construes a similar statute, is to let the proviso eliminate the mandate of the italicized segment. So construed, that segment is purposeless.

I think the legislative intent was this: The school district has the authority to reject any and all bids, but if it concludes to accept any bid, that bid must be the one submitted by the lowest responsible bidder complying with the terms of the letting.

I also feel that if neither the rejected low bidder nor an.affected taxpayer has standing to seek enforcement of the statute, it is sadly in need of a champion.

## ON MOTION FOR REHEARING

### PER CURIAM.

By their Motion for Rehearing or Transfer Page and Killian allege this court failed to consider a decisive question. The motion states: "The question overlooked is: Did the school board violate the requirements of Section 177.086 RSMo by awarding the contract to Crawford?" They argue the contract violated that section and was void because it provided an earlier completion date than did the specifications.

█ It is well settled that an appellate court will review a case only upon the theory advanced at trial. *Collins v. Drake,* 746 S.W.2d 424 (Mo.App.1988). "[To] consider the suggested facts and result alleged to flow therefrom would be to allow presentation of a theory for the first time in this court, a practice which is not permitted." *Morris v. Kansas City,* 391 S.W.2d 198, 200 (Mo.1965).

Further, an error not asserted in a point in an appellant's brief may not be raised in a reply brief, *Application of Gilbert,* 563 S.W.2d 768 (Mo. banc 1978), or in a Motion for Rehearing. Missouri Appellate Practice and Extraordinary Remedies (MoBar-CLE 3rd ed. 1981). Appellant presented "complaints not made in its original brief and raised for the first time in its Motion for Rehearing. These matters are not in compliance with Civil Rule 83.16 V.A.M.R. and will be disregarded." *Masonic Temple Association of St. Louis v. Farrar,* 422 S.W.2d 95, 113 (Mo.App.1967).

By their pleadings in the trial court Page and Killian did not allege the contract with Crawford was invalid because it provided for a completion date earlier than the date called for by the specifications. The only allegation was that the contract with Crawford was invalid because it was not awarded to the lowest bidder.

In the applicable point in their appellants' brief Page and Killian state:

The trial court erred in dismissing the injunction, declaratory judgment and mandamus actions because: (a) The court found that KCC was the lowest responsible bidder for a contract under § 177.086 RSMo, ... and concluded that the Board had discretion, despite those facts, to award the contract to the second lowest bidder, Crawford, because the Board liked Crawford's appearance or thought he might be more qualified. The court erroneously concluded that the Board had authority and discretion to reject the low bid even though it was qualified and responsible, and met all bid specifications.

Page and Killian did not by any point present the question they now contend was overlooked.

The cases cited establish that under the statute the Board had discretion to reject the low bid of Killian. They also establish that as the Board acted in good faith it was proper for it to award the contract to the next lowest bidder Crawford. The question of whether or not a provision in that contract more favorable to the school district than called for by the specifications invalidates the contract was not and is not before this court. Cf. *Pascoe v. Barlum,* 247 Mich. 343, 225 N.W. 506, 65 A.L.R. 833 (1929); *Gridley v. Engelhart,* 322 N.W.2d 3 (S.D.1982).

The motion is denied.

FLANIGAN, J., concurs in result.