PLUMBERS UNION LOCAL
NO. 16, Appellant,

v.

CITY OF OMAHA, DOUGLAS COUNTY,
NEBRASKA, a Municipal Corporation,
Appellee.

No. 90–3089.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1991.

Decided Oct. 10, 1991.

Thomas F. Dowd, Omaha, Neb., for appellant.

Herbert M. Fitle and Thomas O. Mumgaard, Omaha, Neb., for appellee.

Before LAY, Chief Judge, RONEY,[*] Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Plumbers Union Local No. 16 appeals the district court's[1] denial of the Union's motion for summary judgment and its grant of summary judgment in favor of the City of Omaha. We affirm.

I.

The Omaha Plumbing Board enforces municipal regulations concerning plumbing, including the examination and licensing of plumbers. The mayor of Omaha appoints Board members, subject to approval by the city council. The Board consists of two master and two journeyman plumbers plus the health director of the City/County Health Department. Early in 1988 the city council amended the qualifications for service on the Board to require that one of the journeyman plumbers and one of the master plumbers serving on the Board be affiliated with a union. The remaining plumber members of the Board must not be affiliated with a union.

The City claims that equal union and non-union representation on the Board ensures uniform application of the law and promotes public confidence in the Board's integrity. The City contends that two events preceding the 1988 amendment demonstrate the need for balance on the Board. First, in 1986 Robert Newton, a non-union plumber, obtained a substantial money judgment, plus substantial attorneys' fees, against the City, members of the Board,

* The Honorable Paul H. Roney, United States Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

1. The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

the Union's business manager, and others. Newton alleged that the Union had used its majority on the Board to discriminate against non-union plumbers generally and to force Newton himself out of business. Second, shortly before the city council amended the ordinance, it had denied confirmation to the Board of one of the Union's full-time employee members following testimony expressing concern that the appointment would create an imbalance on the Board in favor of union interests, resulting in the sort of situation that led to Newton's lawsuit.

The Union raises two issues on appeal. First, it contends that the ordinance as amended violates the Union's and its members' right to associate as guaranteed by the First and Fourteenth Amendments. Second, it contends that the ordinance violates their right to equal protection under the Fourteenth Amendment.

## II.

"In reviewing a grant of summary judgment, we apply the same standard as that applied by the district court. We thus will affirm the lower court's grant of summary judgment if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Meyer v. Barnes*, 867 F.2d 464, 466 (8th Cir.), *cert. denied*, 493 U.S. 825, 110 S.Ct. 86, 107 L.Ed.2d 51 (1989) (citations omitted).

## III.

■ Our inquiry into whether the ordinance violates the Union's and its members' right to associate is guided by *Lyng v. International Union, United Auto., Aerospace & Agric. Implement Workers*, 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988). That case concerned an amendment to the Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, forbidding households from becoming eligible to participate in the program or from receiving increased food stamp allotments while a household member was on strike. The Court considered whether this restriction infringed the unions' and their members' right to associate. The statute would only implicate that right, the Court stated, if it "'directly and substantially'" interfered with the union members' ability to associate for lawful purposes. *International Union*, 485 U.S. at 366, 108 S.Ct. at 1189 (quoting *Lyng v. Castillo*, 477 U.S. 635, 638, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986)).

The Court found that the statute did not implicate the right of association because it

> does not "order" [union members] not to associate together for the purpose of conducting a strike, or for any other purpose, and it does not "prevent" them from associating together or burden their ability to do so in any significant manner.... [I]t seems "exceedingly unlikely" that this statute will prevent individuals from continuing to associate together in unions to promote their lawful objectives.

*Id.* (quoting *Castillo*, 477 U.S. at 638, 106 S.Ct. at 2729). The Court reached this conclusion even though "one individual quit his job and abandoned his union membership in order to receive food stamps, and another individual left a picket line to seek other work and lost his union membership." *Id.* at 366 n. 4, 108 S.Ct. at 1190 n. 4.

The Union argues that the ordinance interferes with the right to associate because its members might leave the Union to qualify for a non-union position on the Board. It seems unlikely that membership on the Board is so attractive that it could induce candidates to alter their union affiliation in order to qualify. Even if it were, however, two positions remain available for union plumbers; candidates may therefore maintain their union affiliation and still qualify generally for service on the Board. Even supposing isolated defections from the Union may be found, the ordinance would not constrain the vast majority of Omaha plumbers from exercising their right to associate. We therefore find it "exceedingly unlikely" that the amendment to the ordinance will prevent Omaha plumbers from associating together in a union.

We next address the Union's claim that the ordinance as amended violates the equal protection clause. As discussed above, the ordinance does not implicate the Union's and its members' right of association; neither does the Union constitute a protected class for purposes of equal protection analysis. We therefore review the ordinance to determine whether it " 'is rationally related to a legitimate governmental interest.' " *Id.* at 370, 108 S.Ct. at 1192 (quoting *Department of Agriculture v. Moreno*, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973)).

The City maintains that the ordinance is rationally related to two legitimate objectives: the uniform application of the law to both union and non-union plumbers and the restoration of public confidence in the Board's integrity. A balanced Board, it argues, will ensure that neither faction uses the Board to enforce plumbing regulations selectively.

The first objective is analogous to the objective advanced in *Norbeck v. Davenport Community Sch. Dist.*, 545 F.2d 63 (8th Cir.1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). There, the court concluded that a school board had an important interest in ensuring efficient school administration and could forbid a school principal from negotiating on behalf of the teachers' union. Otherwise, the principal would face a conflict between his duty to supervise, discipline and evaluate the teachers and his duty as the union's negotiator to advance the teachers' interests. *Id.* at 67–68. Similarly, the City has, at the very least, a legitimate interest in ensuring uniform enforcement of its plumbing regulations. Therefore the City may require that the Board's membership be balanced so that the Board as a whole faces no conflict between its duty to supervise enforcement of the plumbing regulations and any inclination that Board members may have to advance the interests of union or non-union plumbers.

The City also has a legitimate interest in restoring and maintaining public confidence in the Board's integrity. In *Interna-*

*tional Union* the Court found that the federal government had a legitimate interest in maintaining the integrity of the food stamp program. Therefore Congress could prohibit striking workers from receiving new or increased food stamp allotments, thereby removing the appearance that the government's food stamp policy favored striking workers involved in private labor disputes. 485 U.S. at 371, 108 S.Ct. at 1192. Likewise, the City may require a balanced Board to eliminate any perception among the public of governmental bias in the enforcement of plumbing regulations.

We conclude that both objectives are legitimate and that the amended ordinance is rationally related to them. The judgment of the district court is therefore affirmed.