13 F.Supp.2d 971 (1998)
David HANTEN, et al., Plaintiffs,
v.
The SCHOOL DISTRICT OF RIVERVIEW GARDENS, et al., Defendants.
No. 4:97 CV 2194 SNL.
United States District Court, E.D. Missouri, Eastern Division.
June 11, 1998.
*972 *973 David W. Harlan, Partner, Bradley G. Kafka, Rebecca E. Walsh, Gallop and Johnson, Ira M. Potter, Benson and Guest, Michael A. Kahn, Stinson and Mag, St. Louis, MO, for plaintiffs.
Bradley S. Hiles, Terry L. Potter, Associate, Randall S. Thompson, Blackwell Sanders Peper Martin LLP, St. Louis, MO, for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court on Defendants' Motion to Dismiss and/or for Summary Judgment (# 20). Also pending is Plaintiffs' Motion for Summary Judgment (# 49). The underlying cause of action arises out of the bid selection for the construction of a new elementary school to be built within the Riverview Gardens School District. Plaintiffs include a non-union mechanical subcontractor that was removed from the award-winning lowest bid, three of its employees, and its estimator who is suing in his capacity as a taxpayer and resident of the school district. Defendants include the Riverview Gardens School District, its superintendent, and the individual members of its Board of Education (the "School Board").

Background
In November, 1996, defendant Riverview Gardens School District passed a bond issue that provided funding for several construction projects, including construction for the Moline Elementary School (the "Moline Project"). Due to an enlarged student enrollment and already overcrowded classrooms, the school district sought to have the Moline Project completed before the 1998 school year. In view of this time constraint, Dr. Chris Wright, Superintendent of the Riverview Gardens School District, immediately began to confer with members of the School Board about staffing the Moline Project with union labor. Based upon these informal conversations, Dr. Wright believed that a majority of the School Board favored staffing the Moline Project exclusively with union labor. Accordingly, she asked the school district's attorneys to draft language indicating a preference for union labor and had the project architects include this language in the bid specification.
On May 30, 1997, defendant Riverview Gardens School District issued its Project Manual governing bid submissions for the Moline Project. The Project Manual stated a preference, but did not require, that bidders be signatory to a collective bargaining agreement with an AFL-CIO union. The Project Manual reads, in pertinent part:

*974 The Owner seeks to ensure a ready and adequate supply of highly trained and skilled craft persons, the establishment of reasonable working conditions for construction projects, the provision of negotiated commitments between employers and employees that are legally enforceable, and the assurance of labor stability and labor peace over the life of the project. Accordingly, bidders are encouraged to enter into a collective bargaining agreement for the Project with the St. Louis Building and Construction Trades Council, AFL-CIO, and its affiliated construction of the project. All bidders are required to certify in their bids whether they are already bound by such an agreement or are willing to enter into such an agreement for this Project.
The Project Manual also stated a preference, but did not require, that bidders use workers who have completed an apprenticeship program approved by the Department of Labor. Finally, the Project Manual required that bidders include a list of subcontractors, and that any changes to this list be approved by the School Board.
Five general contractors submitted bids. The low bidder was Wachter, Inc. ("Wachter"), with a base bid of $4,868,550.00. Consistent with the requirements of the Project Manual, Wachter's bid documents listed all of its subcontractors. Two of the subcontractors listed by Wachter did not have contracts with the St. Louis Building and Construction Trades Council: Plaintiff K.C. Heating Cooling & Sheet Metal, Inc. ("K.C.") and Crown Electrical Contracting, Inc. ("Crown"). In fact, three months prior to the submission of the Wachter bid, the employees of K.C. voted against representation by Sheet Metal Workers, Local 36 (a member of the St. Louis Building and Construction Trades Council) in a National Labor Relations Board election held on March 28, 1997.
The bids were opened at 10:00am on June 24, 1997. Upon learning that Wachter was the low bidder, its representative and president, Mark Kamp, allegedly called K.C.'s Estimator, Plaintiff David Hanten, and said, "We've got ourselves a job. Get your submittals together." Wachter had used K.C. as the mechanical subcontractor on several other projects and had worked very closely with K.C. in preparing its bid for the Moline Project.
After the bids were open, the project architect, Gale Hill, returned to his office to examine the bid documents. He noticed that Wachter had represented that 100% of its workforce had completed an apprenticeship program. Having worked with K.C. on other projects, Mr. Hill was aware that K.C. was not signatory to any AFL-CIO contract. Mistakenly believing that participation in an apprenticeship program was synonymous with union affiliation, he telephoned Mark Kamp to find out why Wachter had listed K.C. as its mechanical subcontractor. Mr. Kamp confirmed that K.C. was non-union and informed Mr. Hill that the electrical subcontractor, Crown, was also non-union. When questioned about their apprenticeship certification, Mr. Kamp explained that Wachter had interpreted the preference as applying only to the general contractor, not to each of the subcontractors. At Mr. Hill's request, Mr. Kamp provided the bids of the lowest union mechanical and electrical subcontractors: C & R Heating and Service Company, Inc. ("C & R") and Schneider Electric Co. ("Schneider"). Mr. Hill determined that substituting these two union subcontractors would increase Wachter's bid by $112,374.00.
At 5:30pm on June 24, 1997, Dr. Wright, Assistant Superintendent Charles Nicastro, and the project architects met to go over the bids on the Moline Project. Mr. Hill explained that Wachter's bid included two non-union subcontractors, and that substitution of union subcontractors would increase the bid by $112,374.00. Based upon her earlier conversations with the members of the School Board, Dr. Wright decided that all subcontractors should be signatory to a collective bargaining agreement with an AFL-CIO union and, therefore, that Wachter's bid should be changed to replace K.C. and Crown with C & R and Schneider. Accordingly, prior to the 7:30pm School Board meeting, Dr. Wright and the others re-typed the tabulation sheet to reflect the change in Wachter's bid.
At the 7:30pm School Board meeting on June 24, 1997, the members of the School *975 Board were given a tabulation sheet listing the five bids, with the revised version of the Wachter bid. The School Board ultimately approved the Wachter bid at $5,321,674.00.[1] At the time they approved the Wachter bid, none of the Board members were aware of Wachter's original bid or the replacement of the two non-union subcontractors. The $5,321,674.00 bid was still the lowest bid submitted.
On or before June 27, 1997, Dr. Wright informed the Board members that K.C. and Crown had been replaced by union subcontractors at a higher price and that K.C. was protesting the decision. Although the contract with Wachter had not yet been finalized, none of the School Board members took any action with respect to K.C.'s claim.

Discussion
Plaintiffs bring their First Amended Complaint seeking legal and equitable relief under 42 U.S.C. § 1983 ("§ 1983"), Missouri's Open-Bidding Statute, Mo.Rev.Stat. § 177.086, and Missouri's Sunshine Law, Mo. Rev.Stat. § 610.010 et seq. They allege that Defendants violated the First and Fourteenth Amendments to the United States Constitution and the aforementioned Missouri statutes when they removed K.C. as the mechanical subcontractor from the award-winning lowest bid and replaced it with a more expensive union subcontractor.
Defendants argue for dismissal as to Counts I-IV of Plaintiffs' First Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, and for summary judgment as to Count V. Alternatively, Defendants argue for summary judgment as to all counts of Plaintiffs' First Amended Complaint.[2]
When ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes that all the facts as stated in the complaint are true. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Whisman v. Rinehart, 119 F.3d 1303, 1308 (8th Cir.1997). The allegations in the complaint must be liberally construed in the light most favorable to the plaintiff. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir.1994). "[D]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McCormack v. Citibank, N.A., 979 F.2d 643, 646 (8th Cir.1992) (internal quotations omitted); see also Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir.1982).
A district court may grant a motion for summary judgment, under Rule 56(c) of Federal Rules Civil Procedure, if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party *976 bears the burden of setting forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
In Count I of Plaintiffs' First Amended Complaint, the individual employee plaintiffs allege that Defendants violated their right of free association by removing K.C. as the mechanical subcontractor from Wachter's award-winning bid and substituting a higher priced union subcontractor. Essentially, they argue that it was unlawful for Defendants to require that the Moline Project be staffed exclusively with union labor. Defendants argue that a public body acting in its proprietary capacity may lawfully condition the award of a construction project based upon the union status of the bidders.
It is beyond dispute that "the freedom of an individual to associate for the purpose of advancing beliefs and ideas is protected by the First and Fourteenth Amendments." Abood v. Detroit Board of Education, 431 U.S. 209, 233, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). Likewise, the Supreme Court has recognized that individual workers have a constitutional right to gather together in order to better assert their lawful rights. Lyng v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, 485 U.S. 360, 366, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988) (citing Railroad Trainmen v. Virginia, 377 U.S. 1, 5-6, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964)). As Plaintiffs correctly assert, this right of free association also "plainly presupposes a freedom not to associate." Roberts v. United States Jaycees, 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).
Nevertheless, the government may, consonant with the First Amendment, engage in some conduct that incidentally inhibits protected forms of association. Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 228 (2d.Cir.1996) (citing Lyng, 485 U.S. at 366, 108 S.Ct. 1184); Hoke Co. Inc. v. Tennessee Valley Authority, 854 F.2d 820, 827-28 (6th Cir.1988); see also Plumbers Union v. City of Omaha, 946 F.2d 599, 600 (8th Cir.1991). In Lyng, the Supreme Court upheld the constitutionality of an amendment to the Food Stamp Act, 7. U.S.C. § 2011 et seq., that forbade households from participating in the food stamp program or from receiving increased allotments while any member of the household was out on strike. The Court conducted only a rational-basis review, concluding that a stricter standard was not warranted as the statute did not "directly and substantially interfere" with the appellees' associational rights. Lyng, 485 U.S. at 365-66, 108 S.Ct. 1184. The Court remarked, "it seems exceedingly unlikely that this statute will prevent individuals from continuing to associate together in unions to promote their lawful objectives." Id. at 366, 108 S.Ct. 1184 (internal quotations omitted).[3]
Applying the analysis of Lyng to this case, the Court concludes that Defendants' actions should be reviewed only for a rational basis. Like the statute considered in Lyng, requiring bidders for a public construction project to be signatory to a collective bargaining agreement with an AFL-CIO union does not "directly and substantially interfere" with the individual employee plaintiffs' associational rights. Simply put, it seems exceedingly unlikely that K.C.'s removal from the Moline Project will compel the individual employee plaintiffs to forego their right not to associate in a union. See Lyng, 485 U.S. at 366, 108 S.Ct. 1184; see also Bratton, 95 F.3d at 228; Hoke, 854 F.2d at 828. Moreover, Defendants' desire to *977 have an efficient, productive, and harmonious workforce, and to complete the Moline Project in a timely manner without work stoppages or other unnecessary delays clearly provides a rational basis for their actions. See e.g., Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 662 n. 14, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982) ("It is important to recognize ... that reducing jobsite friction is a legitimate purpose."). Accordingly, Count I of Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted.[4]
The Court finds further support for this conclusion in the Supreme Court's unanimous decision in Building and Construction Trades Council v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc., 507 U.S. 218, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993). In Building and Construction Trades Council, the Supreme Court held that the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., did not pre-empt the enforcement by a state authority, acting as the owner of a construction project, of an otherwise lawful prehire collective-bargaining agreement negotiated by private parties. The Court's decision was based in large part on its distinction between government as regulator and government as proprietor. Indeed, the Court stated, "[i]n the absence of any express or implied indication by Congress that a State may not manage its own property when it pursues its purely proprietary interests, and where analogous private conduct would be permitted, this Court will not infer such a restriction." Building and Construction Trades Council, 507 U.S. at 231-32, 113 S.Ct. 1190. The Court also recognized that allowing public entities to enter into project labor agreements in the construction industry would be consistent with Congress's intent to accommodate conditions specific to that industry in §§ 8(e) and (f) of the NLRA. Id. at 231, 113 S.Ct. 1190. "Such conditions include, among others, the short-term nature of employment which makes posthire collective bargaining difficult, the contractor's need for predictable costs and a steady supply of skilled labor, and a long-standing custom of prehire bargaining in the industry." Id.
Plaintiffs' reliance on Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996), and O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), is misplaced. These patronage cases have no application where the challenged conduct has only an incidental effect on the plaintiff's associational rights. By their very nature, these cases involve a situation in which a government actor is seeking to coerce a particular belief, or to require participation in political activities or support for political views with which the aggrieved individual disagrees. See Lyng, 485 U.S. at 369, 108 S.Ct. 1184 ("the statute challenged in this case requires no exaction from any individual; it does not `coerce' belief; and it does not require appellees to participate in political activities or support political views with which they disagree"). Such direct and substantial interference with an individual's associational rights would demand more exacting scrutiny. As the Court has already indicated, however, there is no direct and substantial interference on these facts.[5]
In Count II of Plaintiffs' First Amended Complaint, K.C. alleges that by forcing its removal from Wachter's award-winning bid, Defendants deprived it of a property interest without due process of law in violation of the Fourteenth Amendment. K.C. insists that it had a protected property interest in the work it would have performed on the Moline Project. *978 Defendants argue that, under Missouri law, a losing bidder obtains no justiciable property interest in the work bid upon.
"To establish a procedural due process violation, a plaintiff must first demonstrate that he has a protected liberty or property interest at stake." Marler v. Missouri State Board of Optometry, 102 F.3d 1453, 1458 (8th Cir.1996). A party claiming a property interest in a benefit must show "a legitimate claim of entitlement" to that benefit. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "[T]he sufficiency of the claim of entitlement must be decided by reference to state law." Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); see also Greeno v. Little Blue Valley Sewer District, 995 F.2d 861, 863 (8th Cir.1993) ("Protected property interests are established by state law.").
Under Missouri law, "[a] rejected or unsuccessful bidder obtains no justiciable property right or any vested interest in the matter." La Mar Construction Co. v. Holt County, R-II School District, 542 S.W.2d 568, 570 (Mo.Ct.App.1976). Nevertheless, Plaintiffs claim that K.C. had a "reasonable expectancy" of receiving the work based upon "mutually explicit understandings that support [its] claim." Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Gold Cross Ambulance & Transfer v. City of Kansas City, 705 F.2d 1005, 1016 (8th Cir.1983). Unfortunately, Count II of Plaintiffs' First Amended Complaint states only a mutually explicit understanding between K.C. and Wachter, and not any of the defendants.[6] As there was no such understanding between K.C. and any of the defendants, K.C.'s expectancy is nothing more than a unilateral expectation. See Roth, 408 U.S. at 577, 92 S.Ct. 2701 ("To have a property interest in a benefit, a person clearly must have more than ... a unilateral expectation."). Accordingly, Count II of Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted.
In Count III of Plaintiffs' First Amended Complaint, the individual employee plaintiffs and K.C. allege that Defendants conspired to violate the individual employee plaintiffs' right of free association and to deprive K.C. of a property interest without due process of law in violation of the Fourteenth Amendment. Count III merely restates the allegations in Counts I and II as a separate conspiracy claim. As the Court has determined that Counts I and II of Plaintiffs' First Amended Complaint fail to state a claim upon which relief can be granted, Count III fails as a matter of law. See K & S Partnership v. Continental Bank, N.A., 952 F.2d 971, 977 (8th Cir.1991) (a claim of civil conspiracy "does not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established.") (internal quotations omitted).[7]
In Count IV of Plaintiffs' First Amended Complaint, plaintiff David Hanten, suing in his capacity as a taxpayer and resident of the school district, alleges that Defendants violated Missouri's Open-Bidding Statute, Mo. Rev.Stat. § 177.086, when they removed K.C. as the mechanical subcontractor from the award-winning lowest bid and replaced it with a more expensive union subcontractor.
As a threshold matter, the Court notes that Missouri's Open-Bidding statute does not facially apply to Hanten's claim. This is because defendant Riverview Gardens School District awarded the contract on the Moline Project to the lowest bidder. Assuming, for the sake of argument, that the statute nevertheless provides a cause of action whenever a school district does not award the lowest possible contract, Count IV of Plaintiffs' First Amended Complaint still fails to state a claim upon which relief can be granted.
Section 177.086 provides, in pertinent part:

*979 No bids shall be entertained by the school district which are not made in accordance with the specifications furnished by them and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the said school district shall have the right to reject any and all bids.
Mo.Rev.Stat. 177.086(2). Missouri courts have consistently interpreted this statute to provide school districts with broad discretion in letting contracts. See e.g., State ex rel. Page v. Reorganized School District R-VI of Christian County, 765 S.W.2d 317, 320-22 (Mo.Ct.App.1989); Metcalf & Eddy Services, Inc. v. City of St. Charles, 701 S.W.2d 497, 499-500 (Mo.Ct.App.1985); La Mar, 542 S.W.2d at 570. In exercising their discretion, school districts are free to reject the lowest bidder so long their decision is not "arbitrary or capricious or from an improper motive." Page, 765 S.W.2d. at 322; La Mar, 542 S.W.2d at 571 ("The rejection of the lowest bid must not be made fraudulently, corruptly, capriciously or without reason.").
As stated above, the school district's preference for union labor was based on its desire to have an efficient, productive, and harmonious workforce, and to complete the Moline Project in a timely manner without work stoppages or other unnecessary delays. While the Court agrees with Plaintiffs' contention that these goals are likely to be present in every construction project, it cannot be said that they are arbitrary, capricious, or unlawful.[8] Contrary to Plaintiffs' assertions, Missouri's Open-Bidding statute does not require school districts to undertake or conduct a formalized study prior to implementing otherwise reasonable and lawful bidding preferences. See e.g., Page, 765 S.W.2d. at 320 (although there are "strong and persuasive" policy arguments in favor of awarding contracts to the lowest qualified bidder, "the authority of the school board is defined by statute").
In Count V of Plaintiffs' First Amended Complaint, all of the plaintiffs allege that Defendants violated Missouri's Sunshine law, Mo.Rev.Stat. § 610.010 et seq., by conducting either a closed meeting on June 24, 1997, or a series of one-on-one closed meetings prior to June 24, 1997, to discuss changing the Project Manual to prohibit the use of any subcontractor on the Moline Project whose employees were not represented by an AFL-CIO union.
The undisputed evidence establishes that a portion of the School Board meeting held on June 24, 1997, was closed to discuss a student disciplinary matter. Student disciplinary matters are excepted from the open-meeting requirement, Mo.Rev.Stat. § 610.021(9), and proper notice of the closed session was given. All of the School Board members who were in attendance have attested that the Moline Project was not discussed during the closed portion of the meeting. Plaintiffs have presented no evidence to the contrary.
Although Defendants' readily admit that the members of the School Board and Dr. Wright informally discussed the workforce issue on several occasions prior to the publication of the Project Manual, an informal meeting "of less than a quorum does not constitute a meeting of a `public governmental body' when there is no intent to avoid the purposes of [the Sunshine Law]." Colombo v. Buford, 935 S.W.2d 690, 699 (Mo.Ct. App.1996). Plaintiffs have no evidence to suggest that Defendants engaged in any activities with the intent of avoiding the purposes of the Sunshine Law. Additionally, Defendants were under no obligation to discuss the workforce issue in an open meeting prior to the publication of the Project Manual. See Mo.Rev.Stat. § 610.021(11) ("Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to *980 the extent they relate to the following: ... Specifications for competitive bidding, until either the specifications are officially approved by the public governmental body or the specifications are published for bid"). Accordingly, Defendants are entitled to summary judgment on Count V of Plaintiffs' First Amended Complaint.
NOTES
[1] The record does not specifically account for the $340,750.00 discrepancy between Watcher's final bid of $5,321,674.00 and its initial bid of $4,868,550.00 plus the union labor substitution cost of $112,374.00. As there does not appear to be any dispute concerning this additional amount, the Court will accept the figures as alleged in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and/or for Summary Judgment.
[2] Defendants' Motion to Dismiss and/or for Summary Judgment was filed on November 26, 1997, and was directed toward Plaintiffs' original Complaint. On December 15, 1997, Plaintiffs' requested leave to file their First Amended Complaint. The Court granted Plaintiffs' request and received Plaintiffs' First Amended Complaint on February 20, 1998. As the parties anticipated these events and addressed Plaintiffs' First Amended Complaint in their supporting memoranda, the Court will treat this motion as if it had been directed toward Plaintiffs' First Amended Complaint.
[3] The Court reached this conclusion even though, "one individual quit his job and abandoned his union membership in order to receive food stamps, and another individual left a picket line to seek other work and lost his union membership." Lyng, 485 U.S. at 366 n. 4, 108 S.Ct. 1184.
[4] Implicit in the Court's conclusion, of course, is that a public body acting in its proprietary capacity may also lawfully exclude union bidders so long as there exists a rational basis for doing so.
[5] Even if the Court were to apply the more rigorous balancing test first articulated in Pickering v. Board of Education of Township High School District 205, Will County, Illinois, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), as Plaintiffs' suggest, Count I of their First Amended Complaint still fails to state a claim upon which relief can be granted. This is because the school district's articulated efficiency concerns are precisely the sort of legitimate government interests which justify curtailing otherwise protected First Amendment activity. See e.g., Umbehr, 518 U.S. at ___, 116 S.Ct. 2342 (government is entitled to deference in its "reasonable assessments of its interests as contractor").
[6] Indeed, the Bid Form for the Moline Project expressly states, "[t]he Owner, in the interest of a standardization and ultimate economy reserves the right to require a substitution for Subcontractors, materials and equipment proposed by the bidder."
[7] In view of the its conclusion with respect to Defendants' Motion to Dismiss Counts I, II, and III of Plaintiffs' First Amended Complaint, the Court need not address Defendants' alternative grounds for summary judgment nor undertake a qualified immunity analysis.
[8] Plaintiffs' bare and unsubstantiated allegations of self-dealing or improper motive on the part of certain members of the School Board are insufficient to state a claim of unlawful motive, favoritism, or corruption. Furthermore, despite Plaintiffs' attempts to color Defendants' actions as secretive or clandestine, it is clear that Dr. Wright and the members of the School Board reasonably considered the needs of the school district and the costs associated with the Moline Project, and stated their justifications, along with their union preference, in the Project Manual governing bid submissions. Plaintiffs' arguments and cases regarding post hoc rationalizations are, therefore, inapposite.